UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA PHIPPS,<br><br>               Plaintiff,<br><br>v.<br><br>CAMP PENDLETON & QUANTICO HOUSING, LLC, and LPC PENDLETON QUANTICO PM LP,<br><br>               Defendants. | Case No.:  3:21-cv-01514-DMS-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE**<br><br>[ECF No. 26] |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute (ECF No. 26). The Court held a hearing on the Joint Motion on October 19, 2022. ECF No. 37. This order follows.

**I.     BACKGROUND**

The parties' dispute concerns certain documents produced by third party APEX Companies, LLC ("APEX") in response to a business record subpoena issued by Plaintiff in this matter on April 11, 2022. The dispute arose between the parties during a deposition of APEX's 30(b)(6) witness, Cole Bryngelson, on June 23, 2022, when Plaintiff's counsel began questioning Mr. Bryngelson regarding some of the documents APEX produced in

response to the subpoena. *See* ECF No. 26-1 (excerpts of Mr. Bryngelson's deposition transcript). After a recess, counsel for the parties agreed to suspend Mr. Bryngelson's deposition until after the Court could resolve Defendants' claim of privilege over the documents. *See id.* at 5-6, Bryngelson Dep. 28:17-29:8.

Defendants contend the documents at issue are attorney-client privileged communications and have accordingly requested that Plaintiff return, sequester, or destroy the documents pursuant to Fed. R. Civ. P. 26(b)(5)(B). Plaintiff argues that Defendants' practice of copying outside counsel on business communications with APEX does not render those communications privileged.[1]

The Advisory Committee Notes to Rule 26(b)(5)(B) make clear that, although the onus is on the producing party to notify the receiving party in writing of the claim of privilege over information produced in discovery, the receiving party then bears the burden of deciding "whether to challenge the claim." Fed. R. Civ. P. 26(b)(5)(B), advisory committee's note to 2006 amendment. *See also Coleman v. Sterling*, No. 3:09-CV-1594-W-BGS, 2011 WL 13177041, at *3 n.4 (S.D. Cal. Nov. 4, 2011); *Woodard v. Victory Recs., Inc.*, No. 11-CV-7594, 2013 WL 4501455, at *2 (N.D. Ill. Aug. 22, 2013). Accordingly, the Court construes the motion at hand as Plaintiff's motion challenging the validity of Defendants' claim of privilege and seeking a determination from the Court on that question.

On August 1, 2022, after reviewing the parties' Joint Motion, the Court ordered Defendants to produce the following documents to the Court for *in camera* review, to aid the Court in resolving the dispute: (1) all documents Plaintiff received from APEX in

---

[1] In their Joint Motion, the parties further request that the Court amend the fact discovery deadline to allow an additional 30 days to take the deposition of APEX's 30(b)(6) witness following adjudication of the dispute. ECF No. 26 at 18. However, the Court has since extended all dates in the case schedule by approximately 90 days each, setting the new fact discovery deadline as January 11, 2023. ECF No. 36 at 2. Accordingly, the Court denies this request as moot.

response to her business record subpoena, and over which Defendants assert a claim of attorney-client privilege; (2) the October 2019 APEX retention agreement between Defendants' outside counsel and APEX, referenced in footnote 6 of the Joint Motion; and (3) the Master Services Agreement between Defendants and APEX referenced in footnote 7 of the Joint Motion. ECF No. 28. Defendants timely produced the documents for *in camera* review.

After *in camera* review, the Court determined that it needed Defendants to provide more clarity regarding which documents in their production they contend are subject to the attorney-client privilege. Specifically, in the Joint Motion, Defendants indicated that the claim of privilege applies only to "communications between Defendants' Counsel Jeffrey Knight of Pillsbury Winthrop Shaw Pittman LLP [("Pillsbury")] and Defendants' retained consultant APEX[.]" ECF No. 26 at 2. However, most of the documents produced for *in camera* review were not communications between Defendants' counsel and APEX, and many were not communications at all. Therefore, the Court held a hearing on October 19, 2022 and required Defendants to produce a privilege log beforehand to narrow the field of documents at issue. *See* ECF Nos. 34, 37.

During the hearing and in their privilege log, Defendants confirmed that the only documents over which they are claiming attorney-client privilege are two emails: (1) a December 10, 2020 email from Mr. Bryngelson to Defendants' outside counsel Jeffrey Knight at Pillsbury, with an attached Word document entitled, "Privileged and Confidential – Draft PRV Report – 261-01 Palma Ct;" and (2) a February 16, 2021 email from Mr. Bryngelson to Regional Maintenance Director for Lincoln Military Housing Elmer Salgado, other employees of Lincoln Military Housing, and Mr. Knight, with an attached PDF document entitled, "PRV Assessment Report – 261-01 Palma Ct[.]" Defense counsel further confirmed during the hearing that the attachments on the emails are not privileged; Defendants are claiming attorney-client privilege only as to the body of each email.

Upon due consideration of the parties' briefing and oral arguments during the motion hearing, the Court will uphold Defendants' claim of attorney-client privilege over the

bodies of the two emails at issue. Accordingly, the Court **RESOLVES** the parties' dispute in Defendants' favor and **DENIES** Plaintiff's motion to reject Defendants' claim of privilege under Rule 26(b)(5)(B). However, as explained in more detail below, this ruling is very narrowly limited to the contents of the emails between APEX and Pillsbury.

## II. LEGAL STANDARD

The parties agree that California law applies to Defendants' claim of attorney-client privilege. The California attorney-client privilege is codified in Cal. Evid. Code §§ 950 *et seq.* The privilege protects confidential communications between a client and lawyer made during the course of the attorney-client relationship. "The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client." *Mitchell v. Super. Ct.*, 691 P.2d 642, 645 (Cal. 1984).

A "confidential communication between client and lawyer" is defined in the California Evidence Code as:

> . . . information transmitted between a client and his or her lawyer in the course of that relationship and in confidence **by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted**, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Cal. Evid. Code § 952 (emphasis added).

"[W]aiver of the attorney-client privilege . . . occurs when any holder of the privilege 'has disclosed a significant part of the communication or has consented to such disclosure made by anyone. . . .'" *Mitchell v. Super. Ct.*, 691 P.2d 642, 647 (Cal. 1984) (quoting Cal. Evid. Code § 912(a)). But, pertinent to the parties' arguments here, a disclosure that is itself privileged does not operate as a waiver. Cal. Evid. Code § 912(c). The word "client" is defined in the California Evidence Code as "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity[.]" Cal. Evid. Code

4

3:21-cv-01514-DMS-AHG

§ 951. "By including 'authorized representative' in the definition of 'client,' the statute extends the privilege to cover not only communications directly between the client and the attorney but also communications between the client's agents and the attorney." *Selten v. Hyon*, 60 Cal. Rptr. 3d 896, 901 (Cal. Ct. App. 2007).

  Accordingly, if the documents at issue are attorney-client communications, the fact that they were disclosed to third parties does not necessarily dictate a finding of waiver of the privilege, so long as they were disclosed "to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted[.]" Cal. Evid. Code § 952. *See also Zurich Am. Ins. Co. v. Super. Ct.*, 66 Cal. Rptr. 3d 833, 839 (Cal. Ct. App. 2007) (quoting *Ins. Co. of N. Am. v. Super. Ct.*, 166 Cal. Rptr. 880, 885 (Cal. Ct. App. 1980)) ("California courts have held that the 'privilege extends to communications which are intended to be confidential, if they are made to attorneys, to family members, business associates, or agents of the party or his attorneys on matters of joint concern, when disclosure of the communication is reasonably necessary to further the interest of the litigant.'") (emphasis deleted).

  In determining whether the privilege applies to a given communication, rather than looking to the contents of the communication, the Court must focus its inquiry on the "dominant purpose of the *relationship* between the parties to the communication. Under that approach, when the party claiming the privilege shows the dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Cal. Earthquake Auth. v. Metro. W. Sec., LLC*, 285 F.R.D. 585, 595 (E.D. Cal. 2012) (quoting *Clark v. Superior Court*, 125 Cal. Rptr. 3d 361, 372 (Cal. Ct. App. 2011)) (emphasis in original).

  This so-called "dominant purpose" test is not always limited to an evaluation of the dominant purpose of the relationship between the parties to the communication, however. The "dominant purpose" test also dictates that where a communication serves a dual

purpose, "one for transmittal to an attorney in the course of professional employment and one not related to that purpose," the Court must also consider the dominant purpose of the *communication*. *Travelers Ins. Cos. v. Super. Ct.*, 191 Cal. Rptr. 871, 879–80 (Cal. Ct. App. 1983) (quotation omitted). The communication is privileged if its dominant purpose is "for transmittal to an attorney in the course of professional employment." *Holm v. Super. Ct.*, 267 P.2d 1025, 1028 (Cal. 1954), *overruled on other grounds by Suezaki v. Super. Ct. of Santa Clara Cnty.*, 373 P.2d 432, 435-37 (Cal. 1962).

### III.   DISCUSSION

As discussed, Defendants are asserting the attorney-client privilege only as to two emails from APEX employee Cole Bryngelson to Defendants' outside counsel Jeffrey Knight, to which Mr. Bryngelson attached post-remediation verification assessment reports ("PRV Assessment Reports") regarding the subject property. Defendants do not assert that the PRV Assessment Reports are themselves privileged, only that the emails to which they are attached are privileged.

In support, Defendants argue that APEX was acting as a consultant for Defendants' counsel Mr. Knight to aid him in rendering legal advice to Defendants, and therefore all communications between APEX and defense counsel were "sought and conducted for the purpose of assisting the attorney" in representing the client, bringing them under the cloak of the attorney-client privilege. ECF No. 26 at 9. Defendants draw a comparison to the facts of *City & Cnty. of S.F. v. Super. Ct. in and for City & Cnty. of S.F. et al.*, 231 P.2d 26, 31 (Cal. 1951), where the Supreme Court of California explained that "[a] communication [] by any form of agency employed or set in motion by the client is within the privilege[,]" including "communications of the attorney's agent to the attorney . . . because the attorney's agent is also the client's sub-agent and is acting as such for the client." Defendants assert that their "dominant purpose, indeed their sole purpose, in retaining APEX was to assist their counsel in his rendering of legal advice with respect to anticipated or ongoing litigation and compliance with Navy regulations." ECF No. 26 at 12.

To establish that APEX was acting as a legal consultant for Pillsbury, Defendants provided the Court with an October 8, 2019 letter from Defendants' counsel Mr. Knight to APEX Senior Project Manager Mr. Bryngelson. Defendants characterize the letter as a retention agreement establishing that defense counsel engaged APEX as a consultant "for the purpose of assisting Defendants' counsel in rendering legal advice regarding regulatory compliance and in anticipation of prospective and ongoing tort litigation. *Id.* at 10-11.

Plaintiff argues that APEX's emails to Defendants on which Mr. Knight is copied are communications "made not in anticipation of litigation, but instead generally as [they relate] to routine mold and moisture inspections" and thus "clearly fall into the normal course and scope of their business. Reports of this kind submitted in the regular course of business do not fall into the category of a privileged communication." ECF No. 26 at 5 (citing *Jessup v. Super. Ct. In and For Santa Clara Cnty.*, 311 P.2d 177 (Cal. Ct. App. 1957)) (emphasis deleted). The *Jessup* court, applying the "dominant purpose" test that looks to the dominant purpose of a communication, quotes *Holm* for the proposition that "there would seem to be no privilege in a communication which is not made to or for further communication to an attorney, although the communication might have some connection with possible liability in the future, such as reports submitted in the regular course of business for study in accident prevention." 311 P.2d at 182 (quoting *Holm*, 267 P.2d at 1028). As explained above, to make such a communication privileged, "the dominant purpose must be for transmittal to an attorney in the course of professional employment." *Holm*, 267 P.2d at 1029.

With respect to the "dominant purpose" test that looks to the dominant purpose of the relationship between the parties to the communication, Plaintiff argues that "APEX is not Mr. Knight's client, APEX is just a vendor Defendants use to do mold and moisture testing." ECF No. 26 at 5. Therefore, Plaintiff argues that while communications from an attorney to a client containing legal advice regarding how APEX should comply with Defendants' naval contracts might be privileged, the inclusion of APEX on communications between Mr. Knight and Defendants would operate as a waiver of any

such privilege. *Id.* Plaintiff further explains that, if the Court accepts Defendants' contention that the communications at issue are privileged merely because Mr. Knight provides compliance advice to APEX, "then theoretically any company doing business under any contract could simply include their attorney on all communications to cloak them in privilege." *Id.* at 5-6. While Plaintiff acknowledges that attorney-client privilege can extend to communications with an attorney's agent, such communication must be made in confidence for the purpose of obtaining legal advice from the lawyer, and legal advice must be sought by the client. *Id.* at 6. Plaintiff contends those conditions are not met here, because the PRV Assessment Reports are prepared "in the course and scope of the routine business of a property management company, and Mr. Knight['s] role is purportedly to revise and revise APEX's reports (*not Defendants*) to ensure compliance with contracts between Defendants and the Navy." *Id.*

While Plaintiffs' arguments would be well-taken if Defendants were asserting that the attorney-client privilege should shield the PRV Assessment Reports from discovery, Defendants' claim of privilege falls short of such an assertion. The Court agrees that the PRV Assessment Reports are not privileged, because the dominant purpose of those communications is for APEX to keep Defendants apprised of the status of any mold or moisture remediation work APEX performs on Defendants' properties. Further, the dominant purpose of the relationship between APEX and Defendants is not for APEX to assist Defendants' counsel in rendering legal advice to Defendants—rather, as Plaintiff argues, the dominant purpose of the relationship between APEX and Defendants is that of a property manager and an independent contractor who provides maintenance work for Defendants' properties. Thus, communications between APEX and Defendants regarding such work would fail both "dominant purpose" tests, as the dominant purpose of their relationship is not that of attorney-client and the dominant purpose of communications such as the PRV Assessment Reports is not to assist defense counsel in providing legal advice.

However, the communications between APEX and defense counsel require a different analysis. The Court finds that the dominant purpose of the specific emails at issue

from Mr. Bryngelson at APEX to Mr. Knight at Pillsbury was to assist Mr. Knight in rendering legal advice to Defendants, because Mr. Bryngelson provided the PRV Assessment Reports to Defendants' outside counsel pursuant to APEX's consulting agreement with Pillsbury. Any communications between APEX and Pillsbury exchanged pursuant to APEX's consulting obligations as set forth in the October 2019 agreement qualify as an attorney-client communication under California law, insofar as APEX agreed to act as an "authorized representative" for Defendants to consult their outside counsel for the purpose of securing legal advice. Cal. Evid. Code § 951. Accordingly, the Court will uphold Defendants' claim of attorney-client privilege over those two emails.

To be clear, the Court's determination in this case is a close call. As discussed, if a communication "served a dual purpose, one for transmittal to an attorney in the course of professional employment and one not related to that purpose, the question is which purpose predominates." *McAdam v. State Nat. Ins. Co.*, 15 F. Supp. 3d 1009, 1014 (S.D. Cal. 2014) (citing *Costco*, 219 P.3d at 745-46); *Travelers*, 191 Cal. Rptr. at 879–80. Here, there is no question that, as stated in both PRV Assessment Reports at issue, the dominant purpose of the transmission of the reports themselves from APEX to Defendants was "to determine if any water damage or suspect microbial growth remained and to verify that all materials within the previously impacted areas were adequately clean and dry." *See* ECF No. 26-1 at 1, 14. Neither PRV Assessment Report contains any reference to legal advice regarding current or ongoing litigation or whether Defendants are in compliance with Navy regulations.

However, because Defendants have raised a narrow claim of privilege with respect to the emails sent by Mr. Bryngelson at APEX to Mr. Knight at Pillsbury, and have conceded that the PRV Assessment Reports themselves are not privileged, the Court must look to the dominant purpose of those emails as well as to the "dominant purpose of the relationship ***between the parties to the communication***." *Cal. Earthquake Auth.*, 285 F.R.D. at 595 (emphasis added). Looking through that lens, the Court finds, first, that the dominant purpose of the relationship ***between APEX and Pillsbury***, as defined by the

October 2019 retention letter, was for APEX to act as a consultant to assist Pillsbury in giving legal advice to Defendants, who are defined as the "Client" in the retention agreement. As discussed, the California Evidence Code extends the definition of "client" to include a client's "authorized representative," which in turn extends the privilege to cover communications between the client's agents and the attorney. Cal. Evid. Code § 951; *Selten*, 60 Cal. Rptr. 3d at 901. Therefore, the relationship between APEX and Pillsbury qualifies as an attorney-client relationship under California privilege law. Second, the Court finds that the dominant purpose of the communications at issue—that is, APEX's transmission of the PRV Assessment Reports to Pillsbury—was to keep Pillsbury informed regarding whether Defendants were in compliance with Navy regulations and whether Defendants might face liability related to the mold and moisture issues at the subject property that APEX was tasked with remediating.

The Court agrees with Plaintiff that the dominant purpose of the relationship ***between APEX and Defendants*** pursuant to the Master Services Agreement was for APEX to act as an independent contractor to provide maintenance services to Defendants' properties. However, determining the dominant purpose of the relationship between APEX and Defendants is not the proper inquiry where, as here, Defendants have narrowly claimed the attorney-client privilege solely as to the email communications between APEX and defense counsel Mr. Knight, and not as to the attached PRV Assessment Reports or as to all communications between APEX and Defendants in general.

Plaintiff's argument that the communications were not made in anticipation of litigation is also not persuasive. Under California attorney-client privilege law, the term "confidential communication" is broadly construed, and communications between a lawyer and client "are ***presumed*** confidential, with the burden on the party seeking disclosure to show otherwise." *Gordon v. Super. Ct.*, 65 Cal. Rptr. 2d 53, 59 (Cal. Ct. App. 1997) (emphasis added). The Supreme Court of California has explained that, because the attorney-client privilege applies to all communications between attorney and client within the scope of the relationship, "the privilege applies not only to communications made in

anticipation of litigation, but also to legal advice when no litigation is threatened." *Roberts v. City of Palmdale*, 853 P.2d 496, 500 (Cal. 1993). Therefore, because the relationship between APEX and Pillsbury qualifies as an attorney-client relationship, the communications between Mr. Bryngelson and Mr. Knight are protected by the attorney-client privilege.

Because this is a close call, the Court finds it necessary to further elaborate on the scope of this ruling to avoid any future disputes over the same issue.

Defendants' claim of privilege initially arose during Mr. Bryngelson's deposition. Plaintiff's counsel questioned Mr. Bryngelson regarding the draft PRV Assessment Report summarizing the post-remediation verification assessment done on November 19, 2020 at the subject property, including indoor temperature and relative humidity readings, visual assessment by the inspector related to whether there was any "damage and microbial impact" visible, moisture meter readings of interior building materials, photos, and copy of the inspector's certification. *See* ECF No. 26-1 at 5, Bryngelson Dep. 25:11-19. Counsel asked Mr. Bryngelson whether he sent it to anyone to be reviewed, and the deponent confirmed that he sent it to Mr. Knight. Bryngelson Dep. 25:20-26:5. Counsel then asked why Mr. Bryngelson decided to send the report to Mr. Knight, and Mr. Bryngelson stated, "That is our agreement. We are required to send every report in draft form." *Id.* 26:10-13. Defense counsel then objected, stating, "That's privileged information." *Id.* 26:14-15. A few minutes later, Plaintiff's counsel asked Mr. Bryngelson, with respect to the same PRV Assessment Report, "I understand you are just providing some testimony about that it's your policy to send those documents [PRV Assessment Reports] over to Mr. Knight; correct?" and ". . . So it's your understanding that in order to conduct business with Lincoln you must do that?" *Id.* 27:13-15; 27:24-25. Again, defense counsel objected to both questions on the basis of attorney-client privilege. *Id.* 27:17-18; 28:1. After those objections, counsel agreed that the deposition should be suspended until the attorney-client privilege dispute was resolved. *Id.* 28:17-29:2.

Independent facts related to a communication—i.e., that a communication took

place, and the time, date, and participants in the communication—are not privileged. *State Farm Fire & Cas. Co. v. Super. Ct.*, 62 Cal. Rptr. 2d 834, 843-44 (Cal. Ct. App. 1997). As discussed during oral argument on the motion, Defendants would be required to include the same information on a privilege log. Therefore, it is permissible for Plaintiff's counsel to establish that Mr. Bryngelson has communicated with defense counsel and when he has done so. It is also permissible for counsel to inquire into APEX's general process for generating the PRV Assessment Reports and whether defense counsel is involved in drafting them. Such questions "do[] not seek to elicit any communication or conversation" between APEX and defense counsel and therefore do not implicate the privilege, which protects only matters that are "communicated" by a client to an attorney in the course of the professional relationship. *Coy v. Super. Ct. of Contra Costa Cnty.*, 373 P.2d 457, 461-62 (Cal. 1962).

However, introducing the emails themselves or inquiring about whether APEX transmitted the PRV Assessment Reports to Mr. Knight does invade the attorney-client privilege, because such lines of inquiry specifically reveal the information that was communicated to the attorney pursuant to APEX's consulting agreement with Pillsbury. "'[I]t is not the content of the communication but the relationship that must be preserved and enhanced as a societal value,' and therefore what is required to establish waiver [of the attorney-client privilege] is not simply disclosure of the contents but the fact 'that certain information had been communicated to the attorney.'" *People v. Gardner*, 165 Cal. Rptr. 415, 418 (Cal. Ct. App. 1980) (quoting (*Lohman v. Super. Ct.*, 146 Cal. Rptr. 171, 175 (Cal. Ct. App. 1978)); *see also Moreno v. SFX Ent., Inc.*, No. CV 14-0880 RSWL (CWx), 2015 WL 12683794, at *3 (C.D. Cal. Aug. 28, 2015) ("The fact that non-privileged information was communicated to an attorney may be privileged, even if the underlying information remains unprotected."). Accordingly, when Mr. Bryngelson's deposition is reconvened, Plaintiff's counsel may not ask whether APEX sent the PRV Assessment Reports regarding the subject property to defense counsel or otherwise ask Mr. Bryngelson to reveal what information, specifically, APEX has communicated to defense counsel.

The Court recognizes that this is a delicate line to tread. But the key guidance to keep in mind is that the privilege protects not only the contents of a communication but also the fact that certain information has been communicated to the attorney by the client, either directly or through APEX as Defendants' authorized representative. Plaintiff's counsel should thus seek to avoid any questions that elicit communications or conversations between APEX and defense counsel or that would force Mr. Bryngelson to reveal any specific information that APEX has shared with defense counsel pursuant to the retention agreement.

## IV.   CONCLUSION

For the reasons explained, the Court finds that the two emails from Mr. Bryngelson to Mr. Knight are protected by the attorney-client privilege. Accordingly, the Court **RESOLVES** the Joint Motion for Determination of Discovery Dispute (ECF No. 26) in Defendants' favor and, construing the Joint Motion as a motion by Plaintiff challenging Defendants' claim of privilege under Rule 26(b)(5)(B), **DENIES** Plaintiff's motion to reject Defendants' claim of privilege over the documents at issue.

**IT IS SO ORDERED.**

Dated:  November 2, 2022

_____
Honorable Allison H. Goddard
United States Magistrate Judge