KRISTIN N. REYNA DEHART (SBN 211075)
kreyna@grsm.com
MATTHEW P. NUGENT (SBN: 214844)
mnugent@grsm.com
TIMOTHY A. HANNA (SBN: 310620)
thanna@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7760
Facsimile: (619) 696-7124

Attorneys for Defendants
CAMP PENDLETON & QUANTICO HOUSING, LLC; LPC PENDLETON
QUANTICO PM

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA PHIPPS,<br><br>                         Plaintiff,<br><br>        vs.<br><br>CAMP PENDLETON & QUANTICO HOUSING LLC, a Delaware limited liability company; LPC PENDLETON QUANTICO PM LP; and DOES 1 through 50, inclusive,<br><br>                         Defendants. | CASE NO. 3:21-cv-1514-DMS-AHG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CAMP PENDLETON & QUANTICO HOUSING LLC'S AND LPC PENDLETON QUANTICO PM LP'S MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>[F.R.C.P. 56]<br><br>Date:       June 30, 2023<br>Time:       1:30 p.m.<br>Judge:      Hon. Dana M. Sabraw<br>Courtroom:  13A |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# TABLE OF CONTENTS

**Page**

I.   OVERVIEW ........................................................................................ 1

II.  PERTINENT FACTUAL BACKGROUND ........................................ 1

    A.   The Navy's Oversight of the Housing at Issue. ................................ 1

    B.   Defendants Performed their Duties as to the Property Per the Contracts and Plans; Plaintiff Breached the Lease by Re-entering the Property During Remediation Work .................................................. 4

III. LEGAL STANDARD ........................................................................ 6

IV.  CAMP PENDLETON'S STATUS AS A FEDERAL ENCLAVE UNDER EXCLUSIVE FEDERAL JURISDICTION SINCE 1942 LIMITS THE CAUSES OF ACTION PLAINTIFF CAN BRING. ........................... 6

    A.   Camp Pendleton has been a Federal Enclave under Exclusive Federal Legislative Jurisdiction since at least December 31, 1942. ............... 6

    B.   Many of Plaintiffs' Causes of Action Did Not Exist under California Law as of December 31, 1942. ........................................................ 9

        1.   Negligent Infliction of Emotional Distress. ............................. 9

        2.   Intentional Infliction of Emotional Distress ........................... 10

        3.   Breach of the Implied Warranty of Habitability/Attorney's Fees under Civil Code 1942.4 ................................................ 10

        4.   Rent Abatement ...................................................................... 12

        5.   Constructive (Wrongful) Eviction ......................................... 12

        6.   Premises Liability (as Plaintiff pleads it) ............................... 13

        7.   Breach of the Implied Covenant of Quiet Use and Enjoyment ............................................................................. 13

V.   THE LEASE SPECIFIES ONLY SUBSTANTIVE FEDERAL LAW APPLIES, WITH LIMITED CARVE OUTS. ................................... 14

VI.  THE SUPREMACY CLAUSE ALSO BARS PLAINTIFF'S STATE LAW CLAIMS. ................................................................................ 15

VII. DEFENDANTS CAN AVAIL THEMSELVES OF THE DEFENSE OF YEARSLEY-BASED DERIVATIVE SOVEREIGN IMMUNITY. ........ 17

    A.   Defendants Are Entitled to the Defense of Derivative Sovereign Immunity Under <u>Yearsley</u>, <u>Campbell-Ewald</u> and Their Progeny ..... 17

-i-

VIII. PLAINTIFF HAS NO EXPERT TESTIMONY TO PROVE THAT DEFENDANTS BREACHED THE STANDARD OF CARE, CAUSING MULTIPLE CLAIMS TO FAIL. ........................................................ 21

IX.   Plaintiff's Punitive Damages Claims Should Be Dismissed. ..................... 24

X.    CONCLUSION ........................................................................................ 25

**Gordon Rees Scully Mansukhani, LLP**
**101 W. Broadway, Suite 2000**
**San Diego, CA 92101**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT                          3:21-cv-1514-DMS-AHG

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. Boeing Laser Tech. Servs.*,
  689 F.3d 1234 (10th Cir. 2012) ........................................................... 17

*Bell v. Sharp Cabrillo Hospital*,
  212 Cal.App.3d 1034 (1989) ................................................................ 34

*Boeing Co. v. Movassaghi*,
  768 F3d 832 (9th Cir. 2014) ................................................................ 25

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988) ............................................................................. 26

*Burge v. Jones*,
  1992 WL 415263 (S.D. Tex. Nov. 18, 1992) ...................................... 25

*Campbell-Ewald v. Gomez*,
  136 S.Ct. 663 (2016) ................................................................. 26, 27, 28

*Catsouras v. Department of California Highway Patrol*,
  (2010) 181 Cal.App.4th 856 .............................................................. 18

*Christiansen v. Superior Court*,
  (1991) 54 Cal.3d 868 ......................................................................... 18

*Clover v. Camp Pendleton & Quantico Housing LLC*,
  20-cv-567 ................................................................................ 19, 21, 22

*Cunningham v. General Dynamics Information Technology Inc.*,
  888 F.3d 640 (4th Cir. 2018) .............................................................. 28

*Ebaugh v. Rabkin*,
  (1972) 22 Cal.App.3d 891 .................................................................. 33

*Erie Railroad Co. v. Tomkins*,
  304 U.S. 64 (1938) ............................................................................. 24

*Estate of Beach v. Carter*,
  15 Cal.3d 623 (1975) ......................................................................... 31

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-iii-

*Fairchild v. Park*,
  90 Cal.App.4th 919 (2001).................................................................22

*Federico v. Lincoln Military Housing et al.*,
  901 F. Supp. 2d 654 (E.D. Va. 2012) .............................................13

*Flowers v. Torrance Memorial Hospital Med. Center*,
  8 Cal.4th 992 (1994) ........................................................ 30, 31, 32

*Gagne v. Bertran*,
  43 Cal.2d 481 (1954) .....................................................................31

*Giraud v. Milovich*,
  29 Cal.App.2d Supp. 543 (1938) ...................................................20

*Goodyear Atomic Corp. v. Miller*,
  486 U.S. 174 (1988)......................................... 18, 24, 30, 31

*Green v. Superior Court*,
  10 Cal.3d 616 (1974) ......................................................19, 20, 21

*In re Hanford Nuclear Reservation Litig.*,
  534 F.3d 986 (9th Cir. 2008) .........................................................26

*Hinson v. Delis*,
  26 Cal.App.3d 62 (1972)................................................................19

*Jamil v. Workforce Res., LLC*,
  2018 U.S. Dist. Lexis 85066 (S.D. Cal. May 21, 2018)
  ("Camp Pendleton is a federal enclave.") ......................................16

*Kelly v. Lockheed Martin Servs. Grp.*,
  25 F. Supp. 2d 1 (D.P.R. 1998) ...........................................17, 18

*Lackner v. North*,
  135 Cal.App.4th 1188 (2006)........................................................34

*Ladd v. County of San Mateo*,
  12 Cal.4th 913 (1996) ...................................................................30

*Laine v. Weinberger*,
  541 F.Supp. 599 (C.D. Cal. 1982)................................................26

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-iv-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT                          3:21-cv-1514-DMS-AHG

*Mangold v. Analytic Servs., Inc.*,
    77 F.3d 1442 (4th Cir. 1996)........................................................................27

*McCulloch v. Maryland*,
    17 U.S. 316 (1819).......................................................................................25

*Miller v. L.A. County Flood Control Dist.*,
    8 Cal.3d 689 (1973) ...............................................................................30, 31

*Myers v. United States*,
    323 F.2d 580 (9th Cir. 1963).......................................................................27

*Naigan v. Nana Servs.*,
    No. 12cv2648—LAB (NLS), 2013 U.S. Dist. LEXIS 133751
    (S.D. Cal. Sept. 18, 2013) ...........................................................................16

*Nedlloyd Lines B.V. et al. v. Superior Court*,
    3 Cal.4th 459 (En banc 1992)......................................................................24

*Oettinger v. Stewart*,
    24 Cal.2d 133 (En banc 1944) .....................................................................22

*Paul v. United States*,
    371 U.S. 245 (1963)......................................................................................17

*Quevado v. Braga*,
    72 Cal.App.3d Supp. 1 (1977).....................................................................21

*Rowland v. Christian*,
    69 Cal.2d 108 (1968) ...................................................................................22

*S.R.A., Inc. v. Minnesota*,
    327 U.S. 558 (1946)......................................................................................17

*San Diego Bldg. Trades Council v. Garmon*,
    359 U.S. 236 (1959)......................................................................................26

*San Diego Gas & Elec. Co. v. Superior Court*,
    13 Cal.4th 893 (1996) ..................................................................................30

*Seiber v. Blanc*,
    76 Cal. 173 (1888) .......................................................................................20

-v-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT                    3:21-cv-1514-DMS-AHG

*Shurow v. Gino Morena Enters., LLC*,
    2017 U.S. Dist. Lexis 66165 (S.D. Cal. May 1, 2017) ................................... 16

*Shurow v. Gino Morena Enters.*,
    LLC, 2017 WL 1550162 (S.D. Cal. May 1, 2017) ......................................... 18

*Southern California Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) .......................................................................... 15

*Sprecher v. Adamson Cos.*,
    30 Cal.3d 358 (1981) ...................................................................................... 31

*Stiefel v. Bechtel Corp.*,
    497 F. Supp. 2d 1138 (S.D. Cal. 2007) .......................................................... 16

*Stonegate Homeowners Assn. v. Staben*,
    144 Cal.App.4th 740 ....................................................................................... 30

*Taylor Energy Company, LLC v. Luttrell*,
    No. 20-30552, 2021 WL 2677635 (5th Cir. June 30, 2021) .................... 28, 29

*The Geo Group, Inc. v. Newsom*,
    50 F.4th 745 (9th Cir. 2022) ........................................................................... 26

*Torres v. Texas Department of Public Safety*,
    142 S.Ct. 2455 (2022) ..................................................................................... 25

*Unigard Ins. Group v. O'Flaherty & Belgum*,
    38 Cal.App.4th 1229 (1995) ........................................................................... 30

*United States v. Jenkins*,
    734 F.2d 1322 (9th Cir. 1983) ........................................................................ 16

*Van Every v. Ogg*,
    59 Cal.563 (1881) ........................................................................................... 20

*Webster v. Claremont Yoga*,
    26 Cal.App.5th 284 (2018) .............................................................................. 30

*West River Elec. Ass'n, Inc. v. Black Hills Power & Light Co.*,
    918 F.2d 713 (8th Cir. 1990) .......................................................................... 17

*White v. Ultramar, Inc.*,
    21 Cal.4th 563 (2000) ..................................................................................... 33

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-vi-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT                    3:21-cv-1514-DMS-AHG

*Yearsley v. W.A. Ross Construction Co.*,
    309 U.S. 18 (1940).............................................. 26, 27, 28

*/ / /*

*/ / /*

**Constitutions**

United States Constitution
    Article I, Section 8, Clause 17.......................................... 16

United States Constitution
    Article I, Section 8, Clause 17.......................................... 16

United States Constitution
    Article VI, Clause 2 ................................................ 24, 25, 26

United States Constitution Supremacy Clause ................................ 10

**Statutes**

10 United States Code
    Section 2885 ........................................................... 11

28 United States Code
    Section 457 ............................................................ 17

28 United States Code
    Section 5001 ...................................................... 17, 18

California Civil Code ..................................................... 21, 23

California Civil Code
    Section 941.2 .......................................................... 20

California Civil Code
    Sections 1159-1179a ................................................... 23

California Civil Code
    Section 1927 ....................................................... 22, 23

California Civil Code
    Section 1940 .......................................................... 20

*Gordon Rees Scully Mansukhani, LLP*
*101 W. Broadway, Suite 2000*
*San Diego, CA 92101*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT                    3:21-cv-1514-DMS-AHG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

California Civil Code
  Sections 1940-1954.1.................................................................. 21, 23

California Civil Code
  Section 1941 ............................................................................... 19, 20

California Civil Code
  Section 1941.1 .................................................................................. 20

California Civil Code
  Sections 1941.1-1942.7.................................................................... 20

California Civil Code
  Section 1941.3 .................................................................................. 20

California Civil Code
  Section 1941.4 .................................................................................. 20

California Civil Code
  Section 1941.5 .................................................................................. 20

California Civil Code
  Section 1941.6 .................................................................................. 20

California Civil Code
  Section 1941.7 .................................................................................. 20

California Civil Code
  Section 1942 ............................................................................... 19, 20

California Civil Code
  Section 1942.1 .................................................................................. 20

California Civil Code
  Section 1942.2 .................................................................................. 20

California Civil Code
  Section 1942.3 .................................................................................. 20

California Civil Code
  Section 1942.4 ............................................................................ 19, 20

California Civil Code
  Section 1942.5 .................................................................................. 20

-viii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT                    3:21-cv-1514-DMS-AHG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

California Civil Code
   Section 1942.6 ........................................................................... 20

California Civil Code
   Section 1942.7 ........................................................................... 20

California Civil Code
   Section 1942.8 ........................................................................... 20

California Civil Code
   Section 1942.9 ........................................................................... 20

California Civil Code
   Sections 1943-1954.1 ................................................................ 20

California Civil Code
   Sections 1980-1991 ................................................................... 23

California Civil Code
   Section 3294 ....................................................................... 33, 34

Civil Code 1942.4 ................................................................. 20, 21

**Court Rules**

Federal Rules of Civil Procedure
   Rule 56(a) .................................................................................. 15

**Treaties**

B.E. Witkin, Summary of California Law: Torts, §§ 449–50 (10th ed.2005)..... 19

Restatement of Torts ..................................................................... 19

Restatement of Torts
   Section 330 ................................................................................ 22

-ix-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT                     3:21-cv-1514-DMS-AHG

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## I.   OVERVIEW

The status of Marine Corps Base Camp Pendleton as a federal enclave under exclusive federal legislative jurisdiction as of at least December 31, 1942, limits the claims that Plaintiff can bring against Defendants.  Moreover, due to the choice of law provision in the lease between Plaintiff and Defendants selecting federal law to govern the parties' tenancy relationship, the causes of action and damages claims—all of which are solely based on state law—surviving the enclave analysis fail.  The Supremacy Clause of the United States Constitution delivers a similar effect, precluding Plaintiff's state law claims from being applied to activities and operations under federal contracts and plans performed on a federal enclave under exclusive federal jurisdiction.

Defendants are also entitled to the defense of derivative sovereign immunity as government contractors acting pursuant to U.S. Congressional authority and at the direction of U.S. Navy in their management of the military housing at issue and in their response to the complaints raised by Plaintiff during her tenancy—which here focuses on response to one plumbing leak and a report by Plaintiff of mold.  The U.S. Navy made a deliberate policy choice to delegate government contractors certain authority to manage military housing, an activity for which the United States could not be sued if it were directly exercising that authority.

Any surviving claims of Plaintiff which have the standard of care as an element should be dismissed as Plaintiff does not have any admissible expert testimony to support that Defendants, professional property lessors and managers, breached the standard of care.  Finally, Plaintiff also has no evidentiary support for her punitive damages claim; that claim should be dismissed.

## II.   PERTINENT FACTUAL BACKGROUND

### A.   The Navy's Oversight of the Housing at Issue.

This case concerns military housing operated under the Military Housing Privatization Initiative ("MHPI") aboard Marine Corps Base Camp Pendleton.

-1-

Under the MHPI, adopted by Congress in 1996, branches of the Armed Forces can establish public-private ventures ("PPVs") with a private entity to operate and manage their military housing on government land to provide housing operating on an improved basis under government oversight. (Ex. A-1 re: Req. for Judicial Notice ("RJN") and DeHart Decl. at ¶2, Military Housing in SD Region EIS, at ES-1 through ES-3; 1-5 through 1-7; Ex. B-1 re: RJN and DeHart Decl., Dept. of Defense ("DoD") Manual, at p.10, 31, 32, 35, Appendix 1). (Rizzo Decl. at ¶3). The MHPI tasks DoD with providing oversight and accountability to "manage military housing privatization projects." 10 U.S.C. §2885.

CPQH is one such PPV, tasked with assisting the Navy with its military housing operations, and of which the Navy is a member and part owner (the "public" member). (Rizzo Decl. at ¶¶4, 5). On or about August 1, 2001, the Navy and Hunt Lincoln Clark Family Communities, LLC entered into an Operating Agreement ("Operating Agreement") to form CPQH. (Id. at ¶4). While CPQH, funded by significant capital contributions from the U.S. government, has primary responsibility for managing the military housing it owns, the Operating Agreement of CPQH makes clear that the United States has a continued interest in directing the cash flow for the operations phases of the project, and retains budgetary approval and oversight, and direct budgeting involvement. (Ex. B to Rizzo Decl., Sec. 2.03, 4.03, 5.04, filed under seal). The United States retains a number of duties with respect to CPQH, in that numerous actions involving the PPV under the Operating Agreement require the United States' express approval, including amending the contracts, directing cash flow/funding, loans and sales, directing replacement of property, asset or development managers. (Id., at Sec. 5.12).

On or about August 1, 2001, the Navy and CPQH entered a fifty-year ground lease ("Ground Lease") for the Serra Mesa neighborhood and other military housing communities on Camp Pendleton. (Rizzo Decl. at ¶6; Ex. C thereto, filed under seal). The Navy retains fee ownership of this property, which

-2-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

includes the property at issue at 261-01 Palma Court, Oceanside, California (the "Property").  (Id.)  The Navy also retains the right to inspect the housing at any time on environmental issues.  (Id. at Ex. C, at Sec. 11.4).

Pursuant to the Operating Agreement, CPQH entered into a property management agreement ("PMA") with LPCPQ, as to the Serra Mesa community, including the Property.  (Id. at ¶7, Ex. D thereto as filed under seal).  Under the terms of the PMAs, LPCPQ acts as the agent of the CPQH in performing various property management functions, like operating and maintaining the properties at issue (including the Property), and following the agreed-to Management Plan (Exhibit A to the PMA), as well as a Mold Management Plan (Appendix 7 to the PMA) ("the Plans"). Defendants were directed by the Ground Lease to prepare the Plans, then reviewed and approved by the Navy.  (Rizzo Decl., ¶8).

The Plans developed a strategy for addressing military housing conditions and maintenance requests, and specifically mold and moisture conditions, in the housing.  The Plans outline a general plan and establish factors to evaluate in response to tenant complaints and service orders, including specifically those as to mold and moisture.  The Navy set the parameters for the Plans.  (Rizzo Decl. at ¶¶8-10; Ex. A to Ex. D [Maintenance Plan] at p. 63-68; App. 7 to Ex. D [Mold Management Plan]; Martinez Decl., ¶3).

The primary contact point with the Navy for this military housing is a Navy Business Agreements Manager ("BAM") from the Naval Facilities Engineering Command ("NAVFAC").  The BAM acts like an asset manager, and their duties involve budget review, evaluation of metrics (including number and types of work order, maintenance issues, mold/water intrusion events), review of work orders and tenancy notes, inspections, and general oversight.  They send inquiries to Defendants regularly. There are weekly and monthly meetings between Defendants and NAVFAC to discuss the various properties.   There are also quarterly walk-throughs of certain properties. Defendants are required to report on

certain metrics to the U.S. Navy bimonthly and monthly, including on mold and water intrusion events.  The BAM or other Navy Housing or NAVFAC personnel have the ability to become involved with any service member (tenant) directly, and/or conduct their own inspection of a property.  If there is a health issue reported, or remediation is required, the U.S. Navy is informed.  NAVFAC and the BAM oversee the implementation of the Plans.  The U.S. Navy also pre-approves Defendants' employee training including on the Plans, and pre-approves all third party contractors used on the housing.  (Rizzo Decl., ¶11).

Marine Corps Installation Command ("MCI") is also involved in the housing.  MCI West has oversight of the Camp Pendleton housing, which reviews budgets, metrics, work orders, and other documents relating to the housing quarterly.  The Family Housing Office, a subcommand of MCI West, manages the day-to-day service member interface.  Representatives from this office, called "Housing Advocates," become involved in issues as they arise. (Rizzo Decl., ¶12).

Courts have found that the Navy retains significant control of and involvement in the operation of its PPVs and management of its properties.  Federico v. Lincoln Military Housing et al., 901 F. Supp. 2d 654, 673 (E.D. Va. 2012) (explaining how the Navy "plays a significant role in the operation" of the PPV).  The Navy itself has also publicly admitted its continued involvement and oversight.  (See generally, Ex. B-1 to RJN and DeHart Decl., ¶3, Department of Defense ("DoD") Manual, DoD Housing Management, at p.10, 31, 32, 35, Appendix 1]; Exs. B and C to Rizzo Decl. [Operating Agreement; Ground Lease]).

### B. Defendants Performed their Duties as to the Property Per the Contracts and Plans; Plaintiff Breached the Lease by Re-entering the Property During Remediation Work.

Plaintiff, a medical disability-retired former servicemember in the U.S. Army, lived at the Property from on or about March 2, 2020 until on or about December 28, 2020. Plaintiff was relocated from the Property by Defendants, and

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

did not reside at the Property, from November 6, 2020 until December 18, 2020, while remediation and repairs were performed to the Property due to a plumbing leak and resulting mold discovered on November 3, 2020. (Martinez Decl., ¶¶2-4, 11-19, Ex. 1 thereto). Plaintiffs' complaint focuses on this one issue as the cause of her claimed injuries and damages. (Doc. #1-3, Ex. A, Complaint ¶¶17-55). Prior to November 3, 2020, Plaintiff had not made any complaints to Defendants about mold, leaks, or musty odors at the Property, had inspected the unit just before move in and noted some issues, but no leaks or mold. (Ex. E-1 to DeHart Decl., Phipps Depo., 91:3-5; 23-96:10; 101:11-16; Martinez Decl., ¶¶6-10, Exs. 1-3 thereto). Contrary to Plaintiff's claims in her Complaint, Defendants responded immediately to Plaintiff's report of discovering mold behind her stove, investigated and found a leak from a pipe within the wall, encapsulated/sealed off the area, and relocated Plaintiff to temporary housing in order to proceed with remediation and repairs and preserve her health and safety. This was all done in conformance with the contracts and Plans agreed to with the U.S. Navy and her Lease. (Rizzo Decl. at ¶¶8-10; Ex. A [Lease]; Ex. A to Ex. D [Maintenance Plan] at p. 63-68; App. 7 to Ex. D [Mold Management Plan]; Martinez Decl., ¶¶11-19). However, in violation of her Lease terms and Defendants' directives to not re-enter the Property during the work without informing and accompanied by Defendants so that whether safe re-entry could be assessed, Plaintiff admittedly re-entered the Property two separate times without permission and unaccompanied, which she then claimed caused her illness. (Martinez Decl., ¶¶12-14, Exs. 4, 5; Doc. #1-3, Ex. A, Complaint, at ¶¶32-34; 36; Ex. E-1 to DeHart Decl., Phipps Depo., 159:23-165:6).

On November 5, 2020, Plaintiff had two mold tests at the Property performed before she relocated. Both indicated levels of mold spores which were comparable to the outside, and no levels of potentially toxic mold. (Ex. F-1 to DeHart Decl., C. Young report, p.5-6). Defendants had wanted to relocate

-5-

Plaintiff on November 5, but Plaintiff asked for an additional day, and was relocated on November 6, 2020. (Martinez Decl., ¶13).  Plaintiff shortly thereafter retained counsel and demanded to have an inspection of the Property during the course of the ongoing remediation.  Plaintiff's counsel requested that work stop on the Property on November 12, 2020, for this inspection.  The Property then sat without work and without completing remediation, for 2 weeks until the inspection could be arranged.  Plaintiff was not living at the Property during this time, or thereafter until December 18, 2020. (Martinez Decl., ¶¶13, 15-17).   On November 24, 2020, the inspection took place, and different species and levels of mold were found at the Property than on November 5. (Ex. F-1 p. 5-6).  The work resumed after the inspection and passed a final post-remediation verification on December 18, 2020.  Plaintiff was given permission to move back in.  Plaintiff however moved out of the Property on December 28, 2020.  No mold or leak issues at the Property have been reported since.  (Martinez Decl., ¶¶11-20).

## III.  **LEGAL STANDARD**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Affirmative defenses may be adjudicated by summary judgment. Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

## IV.  **CAMP PENDLETON'S STATUS AS A FEDERAL ENCLAVE UNDER EXCLUSIVE FEDERAL JURISDICTION SINCE 1942 LIMITS THE CAUSES OF ACTION PLAINTIFF CAN BRING.**

### A.  **Camp Pendleton has been a Federal Enclave under Exclusive Federal Legislative Jurisdiction since at least December 31, 1942.**

Camp Pendleton has been a federal enclave under exclusive federal

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

legislative jurisdiction since December 31, 1942. <u>Jamil v. Workforce Res., LLC</u>, 2018 U.S. Dist. Lexis 85066, *5 (S.D. Cal. May 21, 2018) ("Camp Pendleton is a federal enclave.")  <u>Shurow v. Gino Morena Enters., LLC</u>, 2017 U.S. Dist. Lexis 66165, *5 (S.D. Cal. May 1, 2017) ("Camp Pendleton is a federal enclave established no later than December 31, 1942") <u>Stiefel v. Bechtel Corp.</u>, 497 F. Supp. 2d 1138, 1145 (S.D. Cal. 2007).  Camp Pendleton is "a federal enclave where the federal government exercises exclusive jurisdiction." <u>United States v. Jenkins</u>, 734 F.2d 1322, 1325 (9th Cir. 1983).  The Office of Legal Counsel of the United States, confirms Camp Pendleton is under exclusive federal legislative jurisdiction.  [Doc. # 1-3 [Ex. 8]; Exs. C-1 and D-1 to DeHart Decl. and RJN].

A federal enclave is governed by (1) federal law and (2) state law as it existed before the enclave was established. See, e.g., <u>Naigan v. Nana Servs.</u>, No. 12cv2648—LAB (NLS), 2013 U.S. Dist. LEXIS 133751, at *3 (S.D. Cal. Sept. 18, 2013) (stating that, "[u]nder the federal enclave doctrine, federal jurisdiction over the newly-acquired land because exclusive" and "[s]tate law has effect in the [federal] enclave only if it was enacted before the land became a federal enclave (and assuming it is consistent with federal law), unless Congress has authorized the state to exercise authority (such as by enacting an assimilative statute) or powers are reserved to the state at the time for the transfer").

Article I, § 8, clause 17 of the Constitution provides that Congress shall have power "[t]o exercise exclusive Legislation in all Cases whatsoever" over the District of Columbia and "to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." Const., art. I, § 8, cl. 17; "Exclusive legislative power is in essence complete sovereignty. That is, not only is the federal property immune from taxation because of the supremacy of the Federal Government but state laws, not adopted directly or impliedly by the United States, are ineffective to tax or regulate other

-7-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

property or persons upon that enclave." <u>S.R.A., Inc. v. Minnesota</u>, 327 U.S. 558, 562-63 (1946); see also <u>Paul v. United States</u>, 371 U.S. 245, 268 (1963) (explaining "only state law existing at the time of the acquisition remains enforceable, not subsequent laws").

Indeed, under strikingly similar operative facts, a Texas District Court applying federal enclave jurisdiction ruled that post cession state law claims did not apply in mold litigation filed by residents against the landlord and property manager of on-base military housing. (DeHart Decl., Ex. J-1, Order on Motion for Summary Judgment, <u>Michael Daniels, et al. v. AETC II Privatized Housing, LLC, et al.</u>, W.D. Tex., 5-19-CV-01280-RBF at pp. 4-8.)

There are three exceptions to this general principle. First, Congress can legislate that state laws apply to the enclave. <u>Allison v. Boeing Laser Tech. Servs.</u>, 689 F.3d 1234, 1238 (10th Cir. 2012). Second, a state can expressly reserve the power to legislate for the enclave. <u>Id</u>. Third, a minor changes to a state regulatory program that existed at the time of the cession will apply to the enclave. <u>Id</u>.

"[N]o federal statute yet allows the broad application of state employment, tort and contract law to federal enclaves." <u>Allison</u>, 689 F.3d at 1238; <u>West River Elec. Ass'n, Inc. v. Black Hills Power & Light Co.</u>, 918 F.2d 713, 719 (8th Cir. 1990). Although Federal statutes apply state laws for physical injuries, Courts that have considered the relevant statutes, 28 U.S.C. sec. 5001 (and its predecessor statute, 28 U.S.C. sec. 457), have concluded that this statute is limited to literal "physical injuries" and does not extend to tort law generally. <u>See, e.g.</u>, <u>Kelly v. Lockheed Martin Servs</u>. Grp., 25 F. Supp. 2d 1, 7 (D.P.R. 1998) ("With the passage of this statute, Congress intended to provide relief to certain persons suffering physical injury, or possessing causes of action related to another's physical injury, in federal enclaves.") This narrow exception does not include any other statutory or tort claims for, among other things, property damage and other economic damages (i.e., past rent), or emotional or mental distress or injury.

-8-

Plaintiffs expressly may not recover damages under the personal-injury exception for alleged emotional or mental injuries; this Court has expressly held that section 5001's reference to "personal injury" must be construed to mean only physical injuries.  Shurow v. Gino Morena Enters., LLC, 2017 WL 1550162, at *3 (S.D. Cal. May 1, 2017); Kelly, 25 F. Supp. 2d at 7-9.

Plaintiff's claims all arise from the alleged mismanagement of Camp Pendleton housing, unquestionably a federal facility.  "[A] federally owned facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor, unless Congress clearly authorizes such regulation."  Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 181 (1988) (citing Hancock v. Train, 426 U.S. 167, 179 (1976)). Applying post-cession California law in this case would allow the State of California to dictate the housing rules, regulations and policies of the U.S. Navy as it relates to this military base.  But California, by ceding exclusive federal legislative jurisdiction to the Navy at Camp Pendleton, did not reserve any power to legislate for this enclave, demonstrating that the second exception is not met.

Finally, as none of Plaintiff's claims involve a "state regulatory program" that commenced prior to the enclave being established which then only underwent minor alterations thereafter, the third exception is inapplicable to this case.

Accordingly, only the California common law and statutes in place at the time Camp Pendleton was ceded to the United States—December 31, 1942— govern these claims under the federal enclave analysis.

**B.    Many of Plaintiffs' Causes of Action Did Not Exist under California Law as of December 31, 1942.**

### 1.    Negligent Infliction of Emotional Distress.

"Negligent Infliction of Emotional Distress" is not recognized in California as a separate cause of action or tort apart from negligence. Christiansen v. Superior Court (1991) 54 Cal.3d 868, 884; Catsouras v. Department of California Highway

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Patrol (2010) 181 Cal.App.4th 856, 875.  As such, this cause of action did not exist in 1942.  Judge Burns of this Court recently ruled that this cause of action could not be brought as to housing claims at Camp Pendleton based on federal enclave jurisdiction.  Clover v. Camp Pendleton & Quantico Housing LLC, 20-cv-567, March 4, 2023, p. 9 (Ex. K-1 to DeHart Decl.)

### 2.   Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress was not recognized in California until 1947, after the Restatement of Torts was amended that year to recommend allowing a claim based on the violation of a plaintiff's interest in peace of mind without the necessity of showing the elements of any traditional torts such as assault, battery, false imprisonment, trespass, defamation, or invasion of privacy. See 5 B.E. Witkin, Summary of California Law: Torts, §§ 449–50 (10th ed.2005) (citing State Rubbish Collectors Assn. v. Siliznoff, 38 Cal.2d 330, 336, 240 P.2d 282 (1952); Bowden v. Spiegel, 96 Cal.App.2d 793, 795, 216 P.2d 571 (1950); Richardson v. Pridmore, 97 Cal.App.2d 124, 129, 217 P.2d 113 (1950)).  As such, this cause of action did not exist in California as of 1942, and cannot be brought by Plaintiff based on federal enclave jurisdiction.

### 3.   Breach of the Implied Warranty of Habitability/Attorney's Fees under Civil Code 1942.4

The implied warranty of habitability in California was not recognized until 1972 in Hinson v. Delis, 26 Cal.App.3d 62 (1972).  The California Supreme Court confirmed that such an implied warranty existed in Green v. Superior Court, 10 Cal.3d 616 (1974).  As of 1942, while California Civil Code sections 1941 and 1942 existed, they did not exist in their present version; at the time, these sections simply placed a statutory duty of maintenance and repair upon lessors of residential property and allowed a tenant, after giving reasonable notice of "dilapidations" to his landlord, to either quit the premises without further liability for rent, or repair the dilapidations himself and deduct the cost of the repairs—up

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

to one month's rent—from his rent.  Cal. Civ. Code §§1941 [Enacted in 1872], 1942 [Enacted in 1872], *subsequent amendments omitted*; Green, supra, at 629. Section 1942 was the exclusive remedy for violations of section 1941 as of the time Camp Pendleton became a federal enclave.  See, e.g., Seiber v. Blanc, 76 Cal. 173, 174 (1888); Van Every v. Ogg, 59 Cal.563, 566 (1881); Giraud v. Milovich, 29 Cal.App.2d Supp. 543, 547 (1938).  Here, as Plaintiff left the premises in December 2020 and ceased paying rent, she would be entitled to no further relief under Civil Code 1941 and 1942 as they existed in 1942, had a claim been brought by Plaintiff under those Code provisions.  Civil Code section 1941.1 et seq. and 1942.1 et seq. (that is, the additional provisions following sections 1941 and 1942 respectively, designated with a ".[number]," were not enacted until 1970 or later. Cal. Civ. Code §§1941.1-1942.7.[1] Section 1940 was not enacted until 1976. Cal. Civ. Code §1940. Sections 1943-1954.1 were similarly not enacted until after 1942. Cal. Civ. Code §§1943-1954.1.

The doctrine of the implied warranty of habitability as a cause of action post-dates Camp Pendleton becoming a federal enclave.  The attorney's fee provision of Civil Code 1942.4 also cannot be used to support a claim for attorneys' fees in this case, as this Code section did not exist in 1942.  It was not enacted until 1985. Cal. Civ. Code § 1942.4.

Judge Burns of this Court recently ruled as to another motion for summary judgment brought by these same defendants in another matter, that, based on federal enclave jurisdiction relating to Camp Pendleton, a claim for breach of the implied warranty of habitability as to housing at Camp Pendleton was barred based

---

[1] Cal. Civ. Code §§1941.1 [Added by Stats.1970]; 1941.2 [Added by Stats.1970]; 1941.3 [Added by Stats.1997]; 1941.4 [Added by Stats.1991]; 1941.5 [Added by Stats. 2010]; 1941.6 [Added by Stats. 2010]; 1941.7 [Added by Stats. 2015]; 1942.1 [Added by Stats.1970]; 1942.2 [Added by Stats. 2009]; 1942.3 [Added by Stats. 1985]; 1942.4 [Added by Stats. 1985]; 1942.5 [Added by Stats. 2020]; 1942.6 [Added by Stats. 1999]; 1942.7 [Added by Stats. 2012]; 1942.8 [Added by Stats. 2019]; 1942.9 [Added by Stats. 2021]

on federal enclave jurisdiction.  <u>Clover</u>, <u>supra</u>, p. 9 (Ex. K-1 to DeHart Decl.)

Plaintiff may try to argue that the lease, under the choice of law provision, carves out an exception to the lease being construed solely under federal law by allowing Civil Code sections 1940 to 1954.1 to apply to the lease, somehow resurrecting or saving their implied warranty of habitability claim.  However, Judge Burns rejected this argument in the <u>Clover</u> matter, holding that a contract could not alter federal enclave jurisdiction.  <u>Clover</u>, supra, at 9.  Moreover, Plaintiff does not bring a habitability claim against Defendants under the Civil Code, but for "breach of implied warranty of habitability" [Doc. # 1-3, Ex. A, Complaint at ¶¶ 101-112], which did not exist prior to the 1970s when it was developed by courts and made part of the common law.  Second, Plaintiff does not bring a claim for breach of lease against Defendants, into which she might attempt to bootstrap a claim of breach of the habitability Code provisions referenced in the lease's choice of law provision.  [Doc. # 1-3, Ex. A]. Without a breach of lease claim, she lacks the mechanism to do that.  Standing alone, Plaintiff's breach of the implied warranty of habitability claim (along with the attorney's fees provision of Civil Code 1942.4) did not exist in 1942.

### 4.    Rent Abatement

"Rent Abatement" was only established as a potential cause of action stemming from a breach of the implied warranty of habitability in <u>Quevado v. Braga</u>, 72 Cal.App.3d Supp. 1 (1977).  As such a cause of action did not exist in 1942, it cannot be brought by Plaintiff as to the Camp Pendleton housing.  Judge Burns agreed in the <u>Clover</u> matter that a rent abatement cause of action, like breach of the implied warranty of habitability, could not be sustained as to housing at Camp Pendleton based on federal enclave doctrine.  <u>Clover</u>, supra, at 9.

### 5.    Constructive (Wrongful) Eviction

As Plaintiffs even plead, a cause of action for constructive/wrongful eviction stems from the 1974 California Supreme Court case <u>Green v. Superior</u>

-12-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Court, which adopted the implied warranty of habitability into the common law. [Doc. # No. 1-3, Ex. A, Complaint at ¶¶146-151]. This cause of action, similar to the breach of implied warranty of habitability itself and rent abatement, did not exist in 1942, and cannot be sustained here by Plaintiff. While the Clover case did not bring a cause of action for constructive or wrongful eviction, the same principles hold for this claim as for the breach of the implied warranty of habitability and rent abatement. It is barred by federal enclave jurisdiction at Camp Pendleton.

**6.     Premises Liability (as Plaintiff pleads it)**

Premises liability existed as a cause of action in 1942 but not in its present form as Plaintiff pleads it. As of 1942, the law of premises liability would have categorized Plaintiff as a licensee under Restatement, Torts, section 330, and Defendants would have only owed a duty to refrain from willful or wanton injury. Oettinger v. Stewart, 24 Cal.2d 133, 136-138 (En banc 1944). Modern premises liability claims, as Plaintiff pleads hers, are based on negligence principles, and derive from the case Rowland v. Christian, 69 Cal.2d 108 (1968), which post-dates 1942 and thus cannot be used as a cause of action by Plaintiff. The law of premises liability in 1942 via the Restatement is that which would potentially apply, but such is not pled. Judge Burns in the Clover case barred a premises liability claim based on the same argument. Clover, supra, at 9.

**7.     Breach of the Implied Covenant of Quiet Use and Enjoyment**

Plaintiff's claim for breach of the "implied covenant of quiet use and enjoyment" did not come into its current form until it was discussed in conjunction with the breach of the implied warranty of habitability in 2001 where they were discussed as "overlapping." Fairchild v. Park, 90 Cal.App.4th 919, 444, fn 1 (2001). The "implied covenant" of "quiet possession" of the leased premises in effect in 1942 under Civil Code section 1927 applied "against all persons lawfully

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

claiming the same," essentially offering a method similar to an action to quiet title for a leasehold. Here, Plaintiff does not plead her breach of the implied covenant of quiet use and enjoyment as a violation of Civil Code section 1927- there is no suggestion in the Complaint of any person trying to lawfully claim the property away from her.  The expansion of a claim for breach of the implied covenant of quiet possession into the modern breach of the implied covenant of quiet use and enjoyment was a creature of the courts well after 1942, and should not qualify as a "minor change" to an "existing regulatory scheme."

## V.   THE LEASE SPECIFIES ONLY SUBSTANTIVE FEDERAL LAW APPLIES, WITH LIMITED CARVE OUTS.

Any claims based on state law which survive the above federal enclave analysis are barred because federal law, with few exceptions, governs the contractual relationship between the parties. Plaintiff and CPQH entered into a lease agreement relating to the Property, which governs their relationship with respect to the Property.  The lease contains the following provision:

> **36.   Choice of Law**.  Owner and Resident agree that this Lease and the contractual relationship between the parties shall be construed exclusively in accordance with, and shall be exclusively governed by, federal substantive law, except that the following state law shall apply: California Civil Code, Sections 1940-1954.1 (Leasing Land and Dwellings), and Sections 1980-1991 (Disposition of Personal Property Remaining on Premises at Termination of Tenancy), California Code of Civil Procedure Sections 1159-1179a (Summary Proceedings for Obtaining Possession of Real Property in Certain Cases), and California state common law interpreting these sections.

This choice of law provision was intended to ensure that federal law applies on a federal enclave, with limited exceptions, two of which have no application here. The third relates to habitability Civil Code provisions which could only have applied here had Plaintiff brought a breach of lease claim against Defendants but she did not.  The Court should give effect to the parties' contractual choice of law given the nature of the claims and this dispute, and find that federal law governs the dispute here, not state law as <u>Erie Railroad Co. v. Tomkins</u>, 304 U.S. 64 (1938)

would otherwise require.

California courts strongly enforce choice of law provisions in contracts. The court first determine "1) whether the chosen state has a substantial relationship to the parties or their transaction, or 2) whether there is any other reasonable basis for the parties' choice of law....If either test is met, the court must next determine whether the state's chosen law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law." Nedlloyd Lines B.V. et al. v. Superior Court, 3 Cal.4th 459, 466 (En banc 1992).

Here, it was reasonable for the parties to agree federal law was to govern their relationship as to the Property given the federal government's relationship to this transaction. The Property is on a federal enclave under exclusive federal legislative jurisdiction; Plaintiff is former military; the incident occurred in military housing; and the U.S. Navy is a member of CPQH. Nor would applying federal substantive law offend the "fundamental policy of California." California can have little claim, let alone a fundamental one, to be concerned when the Property and all the events occurred on a federal enclave where California relinquished its authority.

## VI. THE SUPREMACY CLAUSE ALSO BARS PLAINTIFF'S STATE LAW CLAIMS.

Plaintiff cannot establish violations of state law causes of action against Defendants in their role as U.S. government contractors who operate and manage military housing on Camp Pendleton. The Supreme Court has held that "a federally owned facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor, unless Congress clearly authorizes such regulation." Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 181 (1988). The states have no power to "in any manner control, the operations of the constitutional laws enacted by [C]ongress to carry into execution the powers vested in the general government." McCulloch v.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-15-

<u>Maryland</u>, 17 U.S. 316, 436 (1819). Applying California law would effectively place California in the position of dictating military housing rules, regulations and policies to the U.S. government on a federal enclave.

In <u>Torres v. Texas Department of Public Safety</u>, 142 S.Ct. 2455 (2022), the Court held that "'when the States entered the federal system, they renounced their right' to interfere with national policy" in the area of "Congress' power to build and maintain the Armed Forces." <u>Id</u>. at 2463 (quoting <u>PennEast Pipeline Co. LLC v. New Jersey</u>, 594 U.S. ___, 141 S.Ct. 2244, 2259 (2021)). Thus, "as part of the plan of the [Constitutional] Convention," "the States agreed that their sovereignty would 'yield…so far as is necessary' to national policy to raise and maintain the military." <u>Id</u>. at 2459 (quoting <u>PennEast, supra</u>, 141 S.Ct. at 2259). Providing military housing is one of the ways that Congress sets "national policy" to "maintain the military" and state laws that would "interfere with national policy" must yield to Congress' sole power to decide how it wishes to "maintain" members of the Armed Forces. The manner in which Defendants manage base housing under their contracts with the U.S. Navy should not be subject to state laws.

In <u>Boeing Co. v. Movassaghi</u>, 768 F3d 832 (9th Cir. 2014), the applicable state law provided cleanup above and beyond the federal standards, contradicting federal law and exceeding Boeing's contractual obligations. The Court held that the Supremacy Clause trumped state law.

Here, the U.S. Navy set forth its own specific requirements on how this military housing should be operated and managed. "Courts have recognized that the imposition of damages under state tort law amounts to a form of regulation and is therefore subject to the Supremacy Clause." <u>Burge v. Jones</u>, 1992 WL 415263 at *1 (S.D. Tex. Nov. 18, 1992) (citing <u>San Diego Bldg. Trades Council v. Garmon</u>, 359 U.S. 236, 247 (1959)). "The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-16-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme." <u>Garmon</u>, supra, 359 U.S. at 247.  The Ninth Circuit, in <u>The Geo Group, Inc. v. Newsom</u>, 50 F.4th 745 (9th Cir. 2022), agreed.

> The Supreme Court has ruled on numerous occasions that a State is powerless to condition the means by which the Federal Government carries out its activities.  Plaintiffs ask this Court to enjoin the activities of a Federal military installation until the installation conforms to California public nuisance law….This Court simply may not apply the California public nuisance laws to the operations of a Federal military institution. The Supremacy Clause of the United States Constitution, Article VI, Clause 2, forbids it.

<u>Laine v. Weinberger</u>, 541 F.Supp. 599, 604 (C.D. Cal. 1982).

How base housing at Camp Pendleton is managed and operated by a U.S. government contractor following U.S. government contracts and plans, cannot be overridden by state law.

## VII.  DEFENDANTS CAN AVAIL THEMSELVES OF THE DEFENSE OF YEARSLEY-BASED DERIVATIVE SOVEREIGN IMMUNITY.

### A.  Defendants Are Entitled to the Defense of Derivative Sovereign Immunity Under <u>Yearsley</u>, <u>Campbell-Ewald</u> and Their Progeny[2]

CPQH and LPCPQ are entitled to the defense of derivative sovereign immunity as a contractor performing at the direction and authorization of a government officer. Such a contractor is shielded from liability.  See <u>Yearsley v. W.A. Ross Construction Co.</u>, 309 U.S. 18, 22 (1940) ("if this authority to carry out the project was validly conferred, that is, if what was done within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will.")  Courts have extended derivative immunity to private

_____

[2] CPQH and LPCPQ do not argue herein the "government contractor defense" under <u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500 (1988) and <u>In re Hanford Nuclear Reservation Litig.</u>, 534 F.3d 986 (9th Cir. 2008).

contractors, "particularly in light of the government's unquestioned need to delegate governmental functions."  Mangold v. Analytic Servs., Inc., 77 F.3d 1442, 1448 (4th Cir. 1996).

In Yearsley, a government contractor building river dikes at the direction of the U.S. Army Corps of Engineers was not liable for the alleged taking of land washed away by the dikes.  The Ninth Circuit similarly held in Myers v. United States, 323 F.2d 580, 583 (9th Cir. 1963), that no liability could be imposed against a construction company for its work done under and in conformity with a government contract building a road.

In 2016, the U.S. Supreme Court, in Campbell-Ewald v. Gomez, 136 S.Ct. 663 (2016), recognized that federal government contractors are entitled to derivative sovereign immunity when they act within the law pursuant to the authority "validly conferred" to them by the United States government.  136 S.Ct. 663, 673 (2016).  Moreover, the Court in Campbell-Ewald held that derivative sovereign immunity can shield any government contractor from liability, not just contractors engaged in public works projects.  Id. at 672-674.

> Where the Government's "authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress," we explained, "there is no liability on the part of the contractor" who simply performed as the Government directed. *(citation omitted).* The Court contrasted with *Yearsley* cases in which a  Government agent  had "exceeded his authority" or the authority "was not validly conferred"; in those circumstances, the Court said, the agent could be held liable for conduct causing injury to another.

Id. at 673 (citations omitted, emphasis added).

Court decisions post-dating and discussing Campbell-Ewald have held that government contractors can avail themselves of Yearsley if they meet the requirements.  The Fourth Circuit, in 2018, found a government contractor entitled to avail itself of derivative sovereign immunity, where the government authorized the defendant's actions and the government validly conferred that authority.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MSJ OR PARTIAL SUMMARY JUDGMENT   3:21-cv-1514-DMS-AHG

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

<u>Cunningham v. General Dynamics Information Technology Inc.</u> 888 F.3d 640 (4th Cir. 2018).

In the recent case <u>Taylor Energy Company, LLC v. Luttrell,</u> No. 20-30552, 2021 WL 2677635 (5th Cir. June 30, 2021), the Fifth Circuit followed <u>Campbell-Ewald</u> and <u>Cunningham</u>, holding that "*Yearsley* immunity is 'derivative sovereign immunity'… [s]uch immunity shields contractors whose work was 'authorized and directed by the Government of the United States and performed pursuant to [an] Act of Congress.'" <u>Taylor Energy</u> at *3 (citing <u>Campbell-Ewald,</u> 136 S.Ct. at 663). Taylor, the responsible party for an oil spill, sued the Coast Guard's contractor Couvillion for alleged unauthorized activities at the spill site. Couvillion had contracted with the Coast Guard to clean up the spill, pursuant to an Ordering Agreement and Statement of Work that provided goals and tasks for Couvillion to accomplish, including a management plan and containment design. The Coast Guard retained oversight and approved the plans. The Fifth Circuit found that Couvillion was entitled to <u>Yearsley</u> immunity, holding that the evidence demonstrated "the Government's authorization of and direction over Couvillion's work…." and that it was not important whether or not the Government designed the components of Couvillion's work, but "…whether Couvillion adhered to the Government's instructions as described in the contract documents." <u>Id</u>. at *4. This requirement was met because "the Government directed Couvillion to come up with an MC20 site assessment procedure for the… project…[and] [t]he Government authorized Couvillion's plan, the design of the response system, and the installation."

In this matter, derivative sovereign immunity applies because the acts about which Plaintiff complains were performed by Defendants in accordance with the terms of contracts and Plans developed with and approved by the Navy. CPQH was formed by the Navy pursuant to Congressional authorization under the MHPI, and the Navy has a proprietary interest in and continued oversight over CPQH.

-19-

CPQH hired LPCPQ to manage the Property per the directive of the Operating Agreement, including following the Plans developed by CPQH with the Navy. (Rizzo Decl. at ¶¶4-10; Exs. B, C (incl. at Sec. 11, Sec. 12; Ex. D (incl. at Ex. A, Maintenance Plan, and App. 7, Mold Management Plan).

It was within the power of Congress under the MHPI to grant the authorization for the operation and management of Navy military housing, including the Property, to be delegated to the CPQH and its agent LPCPQ. Defendants acted within the scope of their authority in managing the Property, and specifically in responding to the sole leak/mold issue at the Property, and did not exceed their authority or act outside of it- they followed the directives of the Mold Management Plan and the U.S. Navy in responding immediately to inspect, relocating Plaintiff, and then hiring a third party vendor to remediate and repair the issue.   (Ex. 1, 2 to Martinez Decl., Martinez Decl. at ¶¶5, 11-19; Rizzo Decl., Ex. D, E., App. 7, Mold Management Plan).   The alleged injuries and damages arose from Defendants' performance of their duties to the Navy under the contracts and Plans' protocols which were developed in coordination with and with the input and approval of the Navy itself.   All of the conduct alleged in the Complaint occurred while the Defendants were performing their official duties pursuant to contracts and Plans with and involving the U.S. Navy.   This is exactly what the contractor in <u>Taylor Energy</u> did.

Plaintiff cannot point to an instance where Defendants went against the Navy's directives or acted contrary to the contracts or Plans.   As soon as the leak and mold were discovered, it was investigated per the Plans and Plaintiff relocated to other housing until the issue was remedied.   (Martinez Decl. at ¶¶5, 11-19). Plaintiff seeks to impose duties on Defendants (under state law, no less) to "do more," beyond those that the U.S. Navy specified.   On a federal enclave, under exclusive federal jurisdiction, where the parties agreed federal law applied to their relationship, and Defendants are bound to follow U.S. federal government

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

contracts and plans, this is precisely the situation where derivative sovereign immunity has been, and should be, conferred on government contractors.

## VIII.   PLAINTIFF HAS NO EXPERT TESTIMONY TO PROVE THAT DEFENDANTS BREACHED THE STANDARD OF CARE, CAUSING MULTIPLE CLAIMS TO FAIL.

To prevail on a cause of action for negligence or one based on principles of negligence, a plaintiff must establish the standard of care the defendant breached. Miller v. L.A. County Flood Control Dist., 8 Cal.3d 689, 703 (1973). In cases where the standard of care is beyond the common knowledge of the jury, the plaintiff must prove the standard of care by expert testimony. Id. at 702-703. In Miller, the issue was that of negligence in construction. Id. As a general rule, "[t]he standard of care against which the acts of a [professional] are to be measured is a matter peculiarly within the knowledge of experts... and can only be proved by their testimony." Flowers v. Torrance Memorial Hospital Med. Center, 8 Cal.4th 992, 1001 (1994) (physician); Unigard Ins. Group v. O'Flaherty & Belgum, 38 Cal.App.4th 1229, 1239-40 (1995) (attorney); Webster v. Claremont Yoga, 26 Cal.App.5th 284 (2018) (yoga instructor); Stonegate Homeowners Assn. v. Staben, 144 Cal.App.4th 740, 743, 749 (subcontractor).

Plaintiff's causes of action for negligence, nuisance, negligent infliction of emotional distress, gross negligence and premises liability, all require an evaluation of whether Defendants, as professional lessors and property managers of military housing, complied with the standard of care and acted reasonably under the circumstances presented to them in their professional duties. Ladd v. County of San Mateo, 12 Cal.4th 913, 917 (1996) (cause of action for negligence requires breach of duty of due care); see also San Diego Gas & Elec. Co. v. Superior Court, 13 Cal.4th 893, 938-39 (1996) (nuisance requires conduct that causes substantial but also unreasonable interference including evaluation of reasonableness of defendant's conduct); Sprecher v. Adamson Cos., 30 Cal.3d 358, 372 (1981)

-21-

(premises liability sounds in negligence and whether property manager acted reasonably under circumstances).

What constitutes reasonable care depends on the circumstances. <u>Flowers</u>, <u>supra</u>, 8 Cal.4th at 997-98. When the defendant is a professional, the defendant's skill and experience are circumstances relevant to determining the standard of reasonable care. <u>Ibid</u>. Thus, for professionals, reasonable care means "applying the skill, knowledge and competence ordinarily possessed by their fellow practitioners under similar circumstances." <u>Estate of Beach v. Carter,</u> 15 Cal.3d 623, 635 (1975); <u>see also</u> <u>Gagne v. Bertran</u>, 43 Cal.2d 481, 489 (1954) (professionals "have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence".)

In <u>Miller</u>, Plaintiff had the burden of proof at trial to establish his claim of professional negligence, and his failure to call an expert witness on breach of the standard of care precluded him from prevailing without that required expert testimony. <u>Miller</u>, <u>supra</u>, 8 Cal.3d at 701-704. The only exception to a plaintiff's obligation to establish by expert testimony breach of the standard of care for professionals arises when "the conduct required by the particular circumstances is within the common knowledge of the layman." <u>Flowers</u>, <u>supra</u>, 8 Cal.4th at 1001. According to the California Supreme Court, "[t]he 'common knowledge' exception" to the general rule requiring expert testimony to establish the standard of reasonable care for professionals, "is principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.' [Citation.]" (*Ibid.*) "The classic example," the Court explained, "is the X-ray revealing a scalpel left in the patient's body following surgery." (*Ibid.*) Under such circumstances, the failure to exercise

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-22-

ordinary care is obvious. Ibid.

Here, Plaintiff has no expert witness on the standard of care for property management of a large residential community such as that at issue, or property management of Navy-owned military housing,[3] as Defendants do. Defendants' expert Bob Davie, a certified residential property manager in San Diego for over 30 years, has opined, *inter alia*, that Defendants followed the Plans in responding to Plaintiff's report of the leak and mold (opinion #5), did so in a timely manner and with a high level of concern (opinion #7), did not fail to provide a reasonably habitable environment (opinion #10), did not fail to exercise due care to Plaintiff in their leasing, maintaining, repairing and overseeing the Property (opinion #14), and did everything reasonably necessary to address and correct the water-related event at issue (opinion #15). (Ex. F-1 to DeHart Decl., Davie Report).

Plaintiff's mold expert, Joshua Rachal, who is not a property management expert nor qualified in any way to render opinions on property management, attempts to rebut certain of Mr. Davie's opinions which more specifically discuss the leak or mold (opinions #8, 9, 15 and 17), but does not rebut Davie's opinions # 5, 7, 10 or 14 at all. As to opinion #15, Mr. Rachal's main critique is the lack of reference to mold vs. a water event, and that he thinks repair should not have taken as long, apparently not taking into account Plaintiff's own stoppage of the work for her inspection (Ex. H-1 to DeHart Decl, Rachal Rebuttal Report; Martinez Decl. ¶15). Mr. Rachal admits he is not a residential property manager, that his only tangential experience in this realm was answering phones for a few months to take tenant repair requests for his parents' one residential rental property, and that he is essentially unqualified to render opinions in this area. (Ex. L-1 to DeHart

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

---

[3] Or who further opines on the impact of COVID-19 on property management in the year 2020, which is a further salient point here, a complicated matter also outside of lay knowledge.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MSJ OR PARTIAL SUMMARY JUDGMENT   3:21-cv-1514-DMS-AHG

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Decl., Rachal Depo., 45:19-46:22; 129:14-130:1; Ex. I-1 to DeHart Decl., Rachal CV).

Plaintiff cannot escape the requirement of presenting expert testimony to establish breach of the professional standard of care by application of the common knowledge exception. Plaintiff cannot claim the standard of care for a military housing property lessor and property manager, especially one operating pursuant to certain contracts and plans, and during COVID-19, is a matter of common knowledge. Because Plaintiff cannot prove this element of her negligence, nuisance, negligent infliction of emotional distress, gross negligence and premises liability claims, summary judgment should be granted on those claims.

## IX.   PLAINTIFF'S PUNITIVE DAMAGES CLAIMS SHOULD BE DISMISSED.

Punitive damages are proper only if there is "clear and convincing evidence of oppression, fraud or malice" that is committed, authorized or ratified by an "officer, director, or managing agent" of a defendant.  Cal. Civ. Code §3294; White v. Ultramar, Inc., 21 Cal.4th 563, 576 (2000).  Punitive damages require willful conduct and a "conscious disregard" of the safety of others.   Partial summary judgment as to Plaintiff's punitive damages claim is proper here, because there is no allegation or evidence meeting this high threshold.

(1)   There is no pleading, allegation, or evidence of fraud:  Plaintiff brings no claims for intentional fraud against Defendants.

(2)   There is no evidence of malice, or conscious disregard:  There is no evidence that Defendants intended to harm Plaintiff (Ebaugh v. Rabkin (1972) 22 Cal.App.3d 891, 895), and no evidence that Defendants willfully caused the leak or the mold or did not timely respond to Plaintiff's report of this to them.  Instead, Defendants responded immediately to Plaintiff's report of the leak and mold and relocated her out of the Property right away, to address the issue and for her safety. Defendants simply did not act with malice or in "conscious disregard" of the safety

-24-

of Plaintiff, as required for a punitive damage award.

(3)   There is no evidence of oppression:  "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).) There no evidence that Defendants' conduct was "despicable," or that any actions were taken "in conscious disregard of that person's rights."  In fact, the overwhelming evidence supports that Defendants responded, immediately, to Plaintiff and her report of the leak and mold.

Plaintiff's only pleading in support of a punitive damage award is a single conclusory paragraph in her Complaint at paragraph 155 in connection with her Constructive Eviction claim (which should be precluded by federal enclave doctrine), which provides no facts supporting the claimed oppression, fraud or malice, nor any facts that such was further ratified by an officer, director or managing agent of Defendants.  Evidence of negligence, gross negligence, or even recklessness is not sufficient to support an award of punitive damages.  <u>Lackner v. North</u>, 135 Cal.App.4th 1188, 1210-1211 (2006); <u>Bell v. Sharp Cabrillo Hospital</u>, 212 Cal.App.3d 1034, 1044 (1989).  Plaintiff's punitive damages claims should be dismissed.

## X.   <u>CONCLUSION</u>

For all of these reasons, Defendants respectfully request the Court grant their motion for summary judgment or alternatively partial summary judgment.

Dated:  May 9, 2023          GORDON REES SCULLY MANSUKHANI, LLP

By: <u>*/s/ Kristin N. Reyna DeHart*</u>
Kristin N. Reyna DeHart
Matthew P. Nugent
Timothy A. Hanna
Attorneys for Defendants Camp Pendleton & Quantico Housing, LLC; and LPC Pendleton Quantico PM LP