Lenden Webb, Esq. (236377)
Christian B. Clark, Esq. (330380)
**WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121
Telephone: (619) 399-7700
Facsimile: (619) 819-8400
Email: LWebb@WebbLawGroup.com
Email: CClark@WebbLawGroup.com
**Please also serve:** Service@WebbLawGroup.com

Attorneys for Plaintiff,
Victoria Phipps

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA PHIPPS, an individual; | CASE NO. 3:21-cv-01514-DMS-AHG |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT PURSUANT F.R.C.P. 56** |
| vs. | |
| CAMP PENDLETON & QUANTICO HOUSING, LLC, a Delaware limited liability company; LPC PENDLETON QUANTICO PM LP, a Delaware limited partnership; LINCOLN MILITARY PROPERTY MANAGEMENT LP, a Delaware limited partnership; and DOES 1 THROUGH 50, inclusive; | Date: June 30, 2023<br>Time: 1:30 P.M.<br>Judge: Hon. Dana M. Sabraw<br>Courtroom: 13A |
| Defendants. | |

*WEBB LAW GROUP, APC*
*10509 Vista Sorrento Parkway, Suite 450*
*San Diego, CA 92121*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

# **TABLE OF CONTENTS**

I.   INTRODUCTION……………………………………………....4

II.  FACTUAL BACKGROUND …………………………………………..4

III. LEGAL STANDARD …………………………………….......8

IV. PLAINTIFF DID NOT BREACH HER LEASE AGREEMENT AND THE
     AGREEMENTS APPURENANT THERETO ………………..…....…8

     a.  Defendants Fail To Establish Plaintiff's Breach of the Lease
         Agreement ……………………………………………..9

          i.   Defendants Did Not Satisfy Their Obligations Under the
               Lease……………………………………………9

          ii.  Plaintiff Did Not Breach Her Lease By Re-Entering The
               Property The First Time………………………………..11

          iii. Plaintiff Did Not Breach Her Lease By Re-Entering The
               Property The Second Time………………………………....13

          iv.  Plaintiff Did Not Breach Her Lease By Creating A
               "Community Disturbance"…………………………………15

     b.  Defendants Fail To Support Their Claim for Damages…………..16

V.  CONCLUSION……………………………………………....………19

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Khavarian Enterprises, Inc. v. Commline, Inc.* 216 Cal.App.4th 310, 327 (2013) 17

*California Dept. of Toxic Substances Control v. Payless Cleaners, College Cleaners,* 368 F. Supp. 2d 1069 (2005)..............................................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)....................................8, 14, 16

*Monster, LLC v. Superior Court,* 12 Cal.App.5th 1214, 1228 (2017) .................17

*Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014)..................................8, 16

<u>Rules</u>

Federal Rule of Civil Procedure ("FRCP") 56 ........................................................4

Rule 56 of the Federal Rules of Civil Procedure (28 U.S.C.) ................................8

**WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

Plaintiff VICTORIA PHIPPS ("Plaintiff"), hereby submits the instant Opposition to Defendants' Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment Pursuant Federal Rule of Civil Procedure ("FRCP") 56.

## I.      INTRODUCTION

By and through the instant motion, Defendants seek to mitigate their liability based on a breach of contract theory. Defendants allege that Plaintiff breached her Lease Agreement by (1) re-entering her property and (2) creating a neighborhood disturbance. Defendants conclude that they were damaged because of Plaintiff's alleged breach. Defendants' motion entirely ignores numerous pertinent facts, and Defendants draw many inaccurate and improper legal conclusions based thereon. Notably, Defendants provide no support as to how exactly they were damaged by Plaintiff's alleged wrongdoing.

## II.      FACTUAL BACKGROUND

Plaintiff brings suit for alleged negligence, misrepresentation, and habitability issues with her former military housing unit at 261 Palma Court, Unit 1, Oceanside, California 92058 (hereinafter "Leased Property" or "Property") on Camp Pendleton, where she resided from March 2020 to December 2020. Defendants Camp Pendleton & Quantico Housing, LLC and LPC Pendleton Quantico PM LP (collectively "Defendants") served as the property management company and ground lessor for the home and therefore owed a duty to their tenants. Defendants failed to provide a reasonably habitable environment for the Plaintiff and are responsible for the serious illness the Plaintiff developed because of Defendants' negligence and fraudulent conduct.[1] See Decl. of LFW, Ex. 7 p. 8-15 (Dr. Heyman's professional determination of Plaintiff's illnesses reflecting severe and pervasive exposure to mold and related biotoxins).

---

[1] Unfortunately, Ms. Phipps is just one of many individuals dealing with this issue on a **national scale** – the subject of many congressional hearings over the past few years.

**WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

Defendants were aware of several water intrusions and mold issues that were present at the Leased Property prior to Plaintiff's tenancy. (Decl. of LFW, Ex. 1 at ¶¶ 21-22; Decl. of LFW, Ex. 6, Deposition of Phipps at p. 119:12-16; see also 132:6-9). On numerous occasions, Defendants' representatives informed Plaintiff of water intrusions that took place at the Leased Property prior to Plaintiff moving in. (Decl. of LFW, Ex. 1 at ¶¶ 24-26; Decl. of LFW, Ex. 6, Deposition of Phipps at p. 119:12-16; see also 132:6-9). Plaintiff also discovered that her next-door neighbor's home was subject to severe water intrusion and mold issues that were never properly fixed or remediated prior to Plaintiff's tenancy at the Leased Property. (Decl. of LFW, Ex. 1 at ¶¶ 25-26; Decl. of LFW, Ex. 6, Deposition of Phipps at p. 119:12-16; see also 132:6-9). Defendants were aware of these well-documented issues yet did nothing to ensure Plaintiff's health and safety in accordance with their basic contractual obligations under the Lease. (Decl. of LFW, Ex. 1 at ¶¶ 15-26).

From the time Plaintiff moved into the Property, Plaintiff had numerous issues with the home. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 92:6-25; see also 95:7-20). For example, Plaintiff complained on multiple occasions to Defendants regarding Plaintiff's neighbor's cigarette smoke entering the vents and windows on the Property, and the large amount of dog feces from neighbor's dogs that ended up on Plaintiff's lawn and went uncleaned by Plaintiff's neighbors. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 97:16-20; see also 121-122; 123:8-14). Defendants did not assist with either of these issues.

In November of 2020, Defendant sent a pest control company to follow up on a rodent problem that Plaintiff had complained about. (Decl. of LFW, Ex. 1 at ¶ 15). When the representative from the pest control company pulled the stove of the Property out from the wall, he immediately saw severe mold and water damage on the cabinet and floor. (Decl. of LFW, Ex. 6, Deposition of Phipps at p.

WEBB LAW GROUP, APC
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

109:23-110:1). Subsequently, Defendants sent numerous representatives to inspect the mold, including a maintenance person who used a tool to measure the moisture on the cabinet and floor and determined that the reading was "very high" and that the cause was a previous leak in the apartment. (Decl. of LFW, Ex. 1 at ¶¶ 19-21; Decl. of LFW, Ex. 6, Deposition of Phipps at p. 147:4-6). Defendants continuously characterized the issue as "water damage" in both conversation and emails to Plaintiff despite the demonstrable mold that existed and posed a severe threat to Plaintiff's health. (Decl. of LFW, Ex. 1 at ¶23; Decl. of LFW, Ex. 9).

Plaintiff was relocated from the Property by Defendants while remediation and repairs were performed to the Property due to the existence of pervasive mold. *See* Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 2 (Docket #42-1). However, Plaintiff's mandated relocation represents the first time Defendants took action to try and remedy the mold problem despite Plaintiff moving into the Property in March 2020 and experiencing symptoms of illness throughout her tenancy. (Decl. of LFW, Ex. 1 at ¶¶ 7-15).

On November 6, 2020, when Plaintiff arrived at the temporary housing provided by Defendants, she immediately noticed the presence of rodents as well as water stains throughout the closet. (Decl. of LFW, Ex. 1 at ¶ 31; Decl. of LFW, Ex. 6, Deposition of Phipps at p. 172:7-18). Plaintiff reported this issue to the Defendants' representative who accompanies Plaintiff during the walk-through – but Defendants did not follow up on this concern either. (Decl. of LFW, Ex. 1 at ¶ 31).

During Plaintiff's relocation, Defendants allege they instructed Plaintiff not to re-enter the property once they began the remediation process. *See* Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 3 (Docket #42-1). However, one of Defendants' representatives told

**WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

Plaintiff that if the locks on the Property were not changed, indicating that the remediation had not begun, then she was still free to re-enter[2]. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 153:16-21). Accordingly, when Plaintiff realized that she had forgotten to bring her medication from the Property, she went back to retrieve it and noticed that the locks were not changed. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 155:11-13). Plaintiff then briefly re-entered the property to obtain her medicine. *Id*. Plaintiff was concerned when she entered the property and noticed that the protective containments had fallen and that there was a sickly smell throughout the Property; she emailed Defendants subsequently to inform them as much and to request that the containments be re-set[3]. (Decl. of LFW, Ex. 1 at ¶ 32; Decl. of LFW, Ex. 6, Deposition of Phipps at p. 160:3-25).

Several days later, on November 11, 2020, Plaintiff was walking through her neighborhood at approximately midnight due to bout of insomnia, and noticed that the lights had been left on in the Property. (Decl. of LFW, Ex. 1 at ¶ 36; Decl. of LFW, Ex. 6, Deposition of Phipps at p. 163:6-9). Plaintiff was concerned that someone may have been robbing the home. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 155:17-23). She approached the front door and discovered that the locks had not been changed yet. *Id*. Per the instruction that Plaintiff received – that she was free to enter if the locks had not been changed – Plaintiff briefly entered the property to ensure that nothing was awry. Plaintiff was present at the property for less than five (5) minutes. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 162:17-18; see also fn. 2, *supra*).

---

[2] Annette, a representative of Defendants, gave the following instruction to Plaintiff, "As long as the doors are unlocked, like as long as your key fits the lock, you can go in and get whatever you need. Because once they start the work, then they're going to change the locks so you don't have access to whatever's happening in there."
[3] The containments were the only thing stopping Plaintiff's personal property from being exposed to the toxic mold on the property.

---

Upon moving back into the Property for a short time, on or around December 22, 2020, Plaintiff decided to go through the belongings that she still had at the Property and throw away the items that were exposed to mold – per the recommendation of experts; Plaintiff was informed that the porous items could retain spores and mycotoxins – especially since Plaintiff noticed the broken containments. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 183:8-21). When asked what she was doing, Plaintiff explained to passersby that she was merely throwing out items that were exposed to toxic mold. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 181-182).

### III.   LEGAL STANDARD

The United States Supreme Court, while interpreting Rule 56 of the Federal Rules of Civil Procedure (28 U.S.C.), held, "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which is believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### IV.   PLAINTIFF DID NOT BREACH HER LEASE AGREEMENT AND THE AGREEMENTS APPURTENANT THERETO

To prevail on a cause of action for breach of contract, which would include a breach of a lease agreement, a claimant must prove (1) the contract; (2) that claimant's performance of the contract (or excuse for non-performance); (3) the defendant (or counter defendant) breached the contract; and (4) the resulting damage to the claimant. *Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014).

Here, Defendants fail to establish a prima facie case of breach of the Lease Agreement – particularly when measured against the heightened summary

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT PURSUANT F.R.C.P. 56

- 8 -

WEBB LAW GROUP, APC
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

judgment standard requiring Defendants to "demonstrate[e] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett, supra.*

## A. Defendants Fail To Establish Plaintiff's Breach of the Lease Agreement

Defendants assert the Lease in this case includes two pertinent addenda. One of the addenda to the Lease Agreement was a Mold Addendum – of which performance of the terms contained therein are currently at issue. In relevant part, Plaintiff agreed to abide by all instructions given to her by Defendants, in the event of a mold or water intrusion event at the Property, and ensuing remediation. See Decl. of LFW, Ex. 3, "Mold Addendum"; Decl. of LFW, Ex. 6, Deposition of Phipps at p. 90:8-12).

In addition, Plaintiff was also provided with a Temporary Accommodation Acknowledgement in which she also agreed to the various terms incorporated therein. The agreement specifies that "Lincoln Military Housing reserves the right to limit resident access to the home during periods of displacement, to include changing the locks on the home when necessary and after notification to the resident."   See Decl. of LFW, Ex. 4, "Temporary Accommodation Acknowledgement."

### i.  Defendants Did Not Satisfy Their Obligations Under The Lease.

The Lease between Plaintiff and Defendants specifically states that the "Premises is to be used for *Residential Use only*." (Decl. of LFW, Ex. 2, p.3). Under this standard, Plaintiff, a tenant, is legally entitled to rental property that is in good repair and meets basic structural, health, and safety standards. Defendants not only failed to adhere to this basic principle of property management, but did so in breach of the Lease Agreement.

After already living on the property and suffering from mold-related symptoms for months, Plaintiff became aware of the well-documented water

**WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

**WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

intrusions that took place at the Property prior to her moving in. (Decl. of LFW, Ex. 1 at ¶¶24-26; (Decl. of LFW, Ex. 6, Deposition of Phipps at pp. 92:6-25; 95:7-25; see also p.119:12-16). Plaintiff's neighbor confirmed the same as his home was also subject to severe water intrusion and mold issues that were never properly fixed or remediated. (Decl. of LFW, Ex. 1 at ¶¶ 25-26; (see also Decl. of LFW, Ex. 6, Deposition of Phipps at p. 119:12-16). As a result of Defendants' breach of the Lease and negligence regarding the same, Plaintiff now faces permanent, detrimental health conditions. (Decl. of LFW, Ex. 8 at p.51). Indeed, Plaintiff suffered from numerous health conditions prior to moving into the Property. However, Plaintiff has provided ample expert evidence distinguishing the pre-existing symptoms, and the new and exacerbated symptoms she has caused by her severe and pervasive exposure to mold and those which were not. (Decl. of LFW, Ex. 8 p. 52-56).[4]

Moreover, Defendants breached the Lease by way of their blatant disregard of the Community Guidelines. Among the numerous issues Plaintiff encountered while living at the Property was a non-functioning air conditioning and a smoking neighbor. Plaintiff complained on multiple occasions to Defendants regarding Plaintiff's neighbor's cigarette smoke entering the vents and windows on the Property. (Decl. of LFW, Ex. 1 at ¶ 15; Decl. of LFW, Ex. 6, Deposition of Phipps at pp 121-122; see also p.123:8-14).

Per the relevant Lease provision, "a resident shall not disturb, annoy, endanger, or interfere with other residents of the Community…or commit a nuisance on or about the Premises." (Decl. of LFW, Ex. 2). Plaintiff's undesirable experience of inhaling her neighbor's smoke almost certainly constitutes a

---

[4] Additional, Plaintiff has provided evidence which include but are not limited to (1) a diagnosis of generalized anxiety disorder due to mold related illness; (2)a diagnosis of recurrence of major depression due to mold exposure; and (3) a previous diagnosis of migrane headaches due to traumatic brain injury that worsened due to direct effects of mold-related illness. (Decl. of LFW, Ex. 8).

WEBB LAW GROUP, APC
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

nuisance, or at the very least, a "disturbance" or "annoyance." (See Decl. of LFW, Ex. 6, Deposition of Phipps at p. 123:3-5)("these current living conditions do not allow me quiet enjoyment in the apartment that I'm renting"). Here, Defendants breach the terms of the Lease in addition to generally established property law by failing to address this nuisance. (*California Dept. of Toxic Substances Control v. Payless Cleaners, College Cleaners,* 368 F. Supp. 2d 1069 (2005)("[n]ot only is the party who *maintains* the nuisance liable but also the party or parties who create or assist in its creation are responsible or the ensuring damages.").

### ii. Plaintiff Did Not Breach Her Lease By Re-Entering The Property The First Time.

On November 6, 2020, the same afternoon that Plaintiff was relocated to alternative lodging, Plaintiff realized that she forgot to bring her medicine with her. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 155:4-10). In compliance with the instructions she received from Lincoln Military Housing, Plaintiff e-mailed various representatives to request that she be allowed to return to the property to briefly retrieve a few personal items. *Id.* Plaintiff received no response and thereby went back to her property to see if the locks were changed. *Id*. When Plaintiff realized that her key still worked and the locks had not been changed, she entered the Property. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 155:11-13).

Plaintiff's conduct in this instance does not constitute a breach of the Lease Agreement for two (2) reasons: First, the Temporary Accommodation Acknowledgement, in which Defendants purport Plaintiff is in breach of, was not signed by all parties at the time of the first re-entry. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 155:4-5). As such, the contract was not legally binding, and Plaintiff could not have been in breach even assuming she acted in

WEBB LAW GROUP, APC
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

contravention of the terms provided for in the Acknowledgement. (See Lease ¶ 37 - *may only be "amended, modified, altered, or changed" in a signed writing*).

Second, the Mold Addendum required Plaintiff to adhere to any instruction she was given.[5] (Decl. of LFW, Ex. 3). Accordingly, Plaintiff followed the instruction she received from Defendants' representative that she may still enter the property as long as the locks had not been changed. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 162:17-18; see also fn. 2, *supra*). Remediation clearly had not begun yet as Plaintiff re-entered the property the same day she was relocated to an alternative location[6] and the door locks had not been changed.

Defendants are also quick to point out that the same day, November 6, 2020, Plaintiff also went to the La Jolla VA Emergency Room complaining of severe nausea, migraine, and sinus pain. (Decl. of LFW, Ex. 1 at ¶ 34). While this is true, Defendants inaccurately assert that the basis of all of Plaintiff's damages are predicated on this specific exposure to the mold – which lasted around one (1) minute. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 155:11-13). While the exposure on November 6, 2020 may have contributed, albeit marginally, to Plaintiff's symptoms, the Complaint clearly alleges that Plaintiff's negative health effects began manifesting on or around April of 2020 – nearly seven (7) months prior. (Decl. of LFW, Ex. 1 ¶¶11-14). Defendants attempt to downplay the seven (7) months in which Plaintiff was exposed to dangerous mold and unsafe living conditions by asserting, without support or evidence, that all of Plaintiff's damages may permissibly be attributed to the one (1) minute she spent in her

[5] Per page two (2) of the Mold Addendum, the tenant "*may* also be given instructions to follow during these activities, such as instructions to remain out of designated work areas during cleaning or remediation work. These instructions are mandatory and are provided for the safety of both workers and occupants."
[6] Plaintiff re-entered the property "about an hour after [she] moved out." (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 155:6-7).

WEBB LAW GROUP, APC
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

Property on November 6, 2020. *See* Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 8 (Docket #42-1).

### iii.    Plaintiff Did Not Breach Her Lease By Re-Entering The Property The Second Time.

Plaintiff's second re-entry of the Property took place on November 11, 2020, five (5) days after she was relocated. (Decl. of LFW, Ex. 1 ¶36). Plaintiff was walking through her neighborhood at approximately midnight due to a bout of insomnia, and noticed that the lights had been left on the Property. (Decl. of LFW, Ex. 6, Deposition of Phipps at pp. 161-162).  Plaintiff was concerned that someone may have been robbing the home. (*Id*.; Decl. of LFW, Ex. 6 at 155:17-23).

As was the case when she re-entered the Property the first time, Plaintiff found that once again, her key still worked, and the locks had not been changed. (Decl. of LFW, Ex. 6, Deposition of Phipps at pp. 161-162). Accordingly, she briefly entered the property, for less than five (5) minutes, to ensure that nothing was awry. (Decl. of LFW, Ex. 6 at 162:17-18).

Defendants argue that Plaintiff's re-entries constitute a breach of the Lease Agreement, Temporary Accommodation Acknowledgement, and the oral instruction provided to Plaintiff. However, Defendants disingenuously interpret the aforementioned agreements by assuming they contained clear cut rules; In reality, the agreements all share a high level of discretion as it relates to the authority Defendants may exercise throughout the mold discovery and relocation process.  For example, the Temporary Accommodation Acknowledgement states:

> *"*Lincoln Military Housing *reserves the right* to *limit* resident access to the home during periods of displacement.*"*

(Decl. of LFW, Ex. 4).  Likewise, the Mold Addendum states:

WEBB LAW GROUP, APC
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

"[A tenant] *may* also be *given instructions* to follow during these activities, such as instructions to remain out of designated work areas during cleaning or remediation work. These instructions are mandatory and are provided for the safety of both workers and occupants."

(Decl. of LFW, Ex. 3).   Indeed, Defendants cannot point to a specific provision that says Plaintiff is in breach of any agreement solely by re-entering the Property, before the locks were changed – as she was told she was allowed to do. Instead, Defendant's argument hinges on Plaintiff's alleged disobedience of the "instruction" she was given. *See* Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 7-8 (Docket #42-1).

In sum, Plaintiff's position is that she received instructions to the effect that she may re-enter the Property if the locks had not been changed. (Decl. of LFW, Ex. 6, Deposition of Phipps at p. 162:17-18; see also fn. 2, *supra*). Defendants presumably dispute the existence of this instruction. At the very least, this represents an issue of material fact and therefore forms the basis to deny Defendants' Motion for Summary Judgment.  See *Celotex Corp. v. Catrett, supra.*

Finally, Defendants also re-assert their unsubstantiated claim that Plaintiff's re-entry into the Property (for five minutes) is the primary cause of her harm. (Decl. of LFW, Ex. 6 Deposition of Phipps at 162:17-18). While the exposure on November 11, 2020 may have triggered some of Plaintiff's pre-existing symptoms, the Complaint clearly alleges that Plaintiff's negative health effects began manifesting on or around April of 2020 – nearly seven (7) months prior. (Decl. of LFW, Ex. 1 ¶¶11-14). Defendants attempt to downplay the seven (7) months of Plaintiff's repeated and prolonged exposure dangerous mold and unsafe living conditions by asserting, without support or evidence, that all of Plaintiff's damages may permissibly be attributed to the five (5) minutes she

WEBB LAW GROUP, APC
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

spent in her Property on November 11, 2020. *See* Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 9 (Docket #42-1).

### iv.    Plaintiff did not breach her lease by creating a "community disturbance."

Defendants claim that Plaintiff "caused a loud and unreasonable disturbance in the community by commencing [sic] loudly throwing numerous items of her personal property into the community dumpsters, shouting to passersby that she was 'being kicked out of base housing.' And that her items 'had black mold on them.'" *See* Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 9 (Docket #42-1). Defendants claim that such behavior constitutes a Community Disturbance in breach of the Community Policies as incorporated into the Lease. However, Defendants grossly mischaracterize the situation.

Addressing the former assertion, Defendants primarily rely on two (2) self-serving declarations from their own employees to conclude that Plaintiff caused a "loud and unreasonable disturbance." (PHIPPS-CPQH-LPC 380-384). Aside from the reality that these declarations are biased, unsigned, and hearsay, both declarations merely affirm the existence of a *single* complaint that was received. *Id*. Further, the declarations do not indicate who actually complained – no names, contact information, or addresses. Even Defendants' Person Most Qualified, Elvira Martinez, confirmed the following in her deposition: (1) she doesn't know who complained; (2) there was only one "complaint"; and (3) she cannot point to any way in which the single complaint caused Defendants any damage. (Decl. of LFW, Ex. 5, Deposition of Martinez at p. 158-176).

As to the latter assertion, Plaintiff denies ever telling anyone that she was kicked out of base housing. (Decl. of LFW, Ex. 6 Deposition of Phipps at 182-

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT PURSUANT F.R.C.P. 56**

- 15 -

WEBB LAW GROUP, APC
10509 Vista Sorrento Parkway, Suite 450
San Diego CA 92121

183). While Plaintiff admits to telling people her personal items were exposed to toxic mold, it is not a breach of the lease for her to throw away personal items that were proven to be exposed to mold, or for her to tell people that is what she is doing.

In sum, Plaintiff's position is that there was no community disturbance; rather, Plaintiff was throwing away her possessions that were exposed to mold and was open to telling passerbys what she was doing. (Decl. of LFW, Ex. 6, Deposition of Phipps at pp. 180-183). Defendants – armed with a single, unnamed complaint and two self-serving declarations confirming the existence of said complaint – argue that Plaintiff engaged in a loud and unreasonable disturbance as to constitute a breach of the Community Policies. *See* Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 9-10 (Docket #42-1).

Given the conflicting narratives presented by both parties, and the need for assessing witness credibility, the foregoing are at least subject to assessment by a trier of fact. Accordingly, and for the purposes of the present motion, Defendants indisputably fail to "demonstrate[e] the absence of a genuine issue of material fact" as required to prevail on a Motion for Summary Judgment. *See Celotex Corp. v. Catrett, supra.*

**B.  Defendants Fail To Support Their Claim For Damages**

As prefaced above, in order to support a prima facie case for breach of contract, the claiming party must also prove the fourth element: resulting damage to the claimant. *Richman v. Hartley*, *supra*. Here, Defendants are unable to prove that they were damaged; the mere inclusion of a brief and overly generalized paragraph does not suffice against the requisite Motion for Summary Judgment standard. In sum, Defendants essentially argue they were damaged (1) by having to pay attorney fees to defend against Plaintiff's claims; and (2) that they were

damaged by way of reputation based on Plaintiff's isolated acts. *See* Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 10-11 (Docket #42-1).

First, Defendants improperly suggest that they may substitute attorney fees as an element for damages in their prima facie case. Such a claim contravenes established precedent. Courts have consistently "distingsuish[ed] between" attorney's fees thar are sought as "the allowance…to the prevailing party as an incident to the principal cause of action," and those that are sought as "part of the cause of action." *Monster, LLC v. Superior Court,* 12 Cal.App.5th 1214, 1228 (2017). When "fees are part of the relief sought," as they are here, they "must be pleaded and proved **at trial**." *Id.; Khavarian Enterprises, Inc. v. Commline, Inc.* 216 Cal.App.4th 310, 327 (2013). Defendants cannot, without genuine issue of a material fact, establish causation between Plaintiff's alleged breach of contract and the attorney fees they have incurred defending this suit. Indeed, Plaintiff has provided more evidence to show that Defendants' negligence – failing to maintain suitable and safe living conditions for Plaintiff – is primarily responsible for the corresponding attorney fees incurred thus far.

Second, Defendants boldly argue that their reputation was damaged "due to Plaintiff's behavior in the community" in reference to their alleged community disturbance theory of breach of contract. *Id.* However, assuming *arguendo* that Defendants can prove they were damaged by that instance – or even offer any admissible evidence whatsoever (they have yet to do so), any damage they may have incurred is overshadowed by their already poor reputation. A cursory search of Lincoln Military Housing online shows numerous lawsuits and news articles about substandard housing, mold, and water intrusion. Indeed, the company recently was subject to congressional hearings regarding the issue of inadequate

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT PURSUANT F.R.C.P. 56**

- 17 -

**WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

military housing; this is a national issue[7] and it is laughable to claim anything Plaintiff allegedly did caused Defendants reputational damage.

Additionally, Defendants have not retained any expert to provide any opinion concerning reputational damage or damage the business has incurred throughout the discovery process. In general, proving reputational damage in would require expert testimony; here, proving that the individual exposure of Plaintiff's alleged behavior on one afternoon is responsible for reputational harm, as opposed to the accumulation of reputational damage that has taken place on a national scale for months prior, would undoubtedly require expert testimony to prove. Any testimony to this end without an expert would be purely speculative. Accordingly, Defendants' accusation that Plaintiff, by way of talking to a handful of passersby, is responsible for hurting their reputation is misguided and unsubstantiated.

Notably, Defendants have a fixed customer base as military members cannot readily choose what company's housing they want to live in. Accordingly, Defendants' business model creates a near guaranteed number of customers. There would have to be an incredible number of military service members who decide to live off-base rather than on-base in order for Defendants to demonstrate any sort of damage suffered. As it stands, Defendants have provided no evidence to suggest the occurrence of such a phenomenon. Accordingly, given the lack of evidence and support proffered by Defendants, there is no reasonable basis for Defendants to conclude that Plaintiff has caused them any monetary damage.

Finally, Defendants omit the fact that they previously dismissed their claim for reputation damages against Plaintiff. Yet, Defendants now rely on the exact claim they voluntarily surrendered months ago. Accordingly, Defendants are

---

[7] Representatives of companies that provide privatized housing on military bases testified before the *Joint House Subcommittee on Personnel and Readiness and Management Support* regarding the "Current Condition of the Military Housing Privatization Initiative."

**WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121

precluded from proving damages on a "reputational harm" theory. Defendants are unable to prove damages in this matter and therefore fail as a matter of law to establish all elements of their prima facie case.

## V.     CONCLUSION

Based upon the foregoing, Plaintiff respectfully request that this Court deny Defendants' Motion for Summary Judgment in its entirety.


Dated: June 16, 2023                                **WEBB LAW GROUP, APC**


                                               By _____
                                                   Lenden F. Webb
                                                   Christian B. Clark
                                                   Attorneys for Plaintiff

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

     I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my primary business address is: **10509 Vista Sorrento Parkway, Suite 450, San Diego, CA 92121.** My email address is **Service@WebbLawGroup.com**.

     On **June 16, 2023** I caused the service of document(s) described as:

  **I.**     **Opposition to Motion for Summary Judgment – Declaration of LFW**
 **II.**     **Opposition to Motion for Summary Judgment – Memo of Points and Authorities**
**III.**     **Opposition to Motion for Summary Judgment Alternatively – Declaration of LFW**
 **IV.**     **Opposition to Motion for Summary Judgment Alternatively – Memo of Points and Authorities**

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope at: San Diego, California, addressed as follows:

Kristin N. Reyna DeHart, Esq.
Matthew P. Nugent, Esq.
Timothy A. Hanna
Angela H. Hampton
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
*Telephone: (619) 230-7760*
*Facsimile: (619) 696-7124*
*Email: KReyna@grsm.com*
*Email: MNugent@grsm.com*
*Email: THanna@grsm.com*
*Email: TVillegas@grsm.com*

*Attorneys for Defendants Camp Pendelton &*
*Quantico Housing, LLC; LPC Pendleton Quantico*
*PM; Lincoln Military Property Management LP*

_____    (BY MAIL) I am readily familiar with this business' practice for collection and processing of correspondence for mailing, and that correspondence, with postage thereon fully prepaid, will be deposited with the U.S. Postal Service on the date hereinabove in the ordinary course of business, at San Diego, California.

 XX    (BY E-MAIL) I caused the above-referenced document(s) to be electronically mailed to the offices of the addressee(s) as a courtesy, pursuant to an applicable code or a valid stipulation. *(Stipulation for service via email pursuant to CCP § 1010.6(a)(4)(B) entered on March 31, 2020).* I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Executed on **June 16, 2023**, at San Diego, California.

 XX    (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
TIRENA M. RAYMOND