1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11 | VICTORIA PHIPPS, an individual,          Case No.:  21cv1514 DMS(AHG)

12 |                          Plaintiff,

13 | v.                                        **ORDER (1) DENYING**
                                               **DEFENDANTS' MOTION FOR**
14 | CAMP PENDLETON & QUANTICO                 **PARTIAL SUMMARY JUDGMENT**
     HOUSING, LLC, a Delaware Limited          **ON ITS COUNTERCLAIM FOR**
15 | Liability Company; LPC PENDLETON          **BREACH OF LEASE AND (2)**
     QUANTICO PM LP, a Delaware Limited        **GRANTING IN PART AND**
16 | Partnership; and DOES 1 to 50, inclusive, **DENYING IN PART DEFENDANTS'**
                                               **MOTION FOR SUMMARY**
17 |                                           **JUDGMENT**
                             Defendants.
18

19 | CAMP PENDLETON & QUANTICO
     HOUSING, LLC; LPC PENDLETON
20 | QUANTICO PM LP,

21 |                     Counterclaimants,

22 | v.

23 | VICTORIA PHIPPS,

24 |                     Counterdefendant.

25

26

27       This case comes before the Court on the motion for partial summary judgment filed

28 by Defendants/Counterclaimants Camp Pendleton & Quantico Housing, LLC ("CPQH")

1 and LPC Pendleton Quantico PM LC ("Lincoln") on (1) their counterclaim for breach of

2 CPQH's Lease Agreement with Plaintiff/Counterdefendant Victoria Phipps, and (2) their

3 motion for summary judgment on Plaintiff's claims.  Plaintiff filed an opposition to each

4 motion, and Defendants filed reply briefs.  After a thorough review of the issues,

5 Defendants' motion for partial summary judgment is denied, and their motion for summary

6 judgment is granted in part and denied in part.

## I.

## BACKGROUND

9       Plaintiff Victoria Phipps is a medical retiree of the United States Army.  (Decl. of

10 Lenden Webb in Supp. of Pl.'s Opp'n to Mot. for Partial Summ. J. ("Webb Decl."), Ex. 6

11 at 48:6-9, ECF No. 48-1 at 207.)  On February 14, 2020, she entered into a Lease

12 Agreement ("the Lease") with CPQH for a 1 bed/1.5 bath townhouse at 261-01 Palma

13 Court in the Serra Mesa neighborhood on Camp Pendleton.  (Decl. of Elvira Martinez in

14 Supp. of Mot. for Partial Summ. J. ("Martinez Decl."), Ex. A, ECF No. 42-3.)[1]

15       Phipps moved into the home in March 2020, and shortly thereafter notified Lincoln,

16 the property management company, about the possibility of mice in her unit.  (Webb Decl.,

17 Ex. 6 at 103:10-25.)  In response, Lincoln sent pest control personnel to Phipps's home,

18 and they set rodent traps in the house.  (*Id.* at 104:11-20.)  During a follow up inspection

19 in November of 2020, an inspector moved Phipps's stove and found mold on a kitchen

20 cabinet.  (*Id.* at 109:23-110:12.)  Later that day, a Lincoln inspector sealed off the mold,

21 and told Phipps "that there was a water leak that happened before [Phipps] even moved in

---

[1] Plaintiff's counsel has been involved in at least two other cases against CPQH and Lincoln on behalf of other residents of military housing on Camp Pendleton and other military bases. *See Clover v. Camp Pendleton & Quantico Housing LLC*, Case No. 20cv0567 LAB (WVG) (Camp Pendleton); *Beck v. Camp Pendleton & Quantico Housing LLC*, Case No. 20cv0579 LAB (WVG) (Twentynine Palms).  The summary judgment order in *Clover* includes helpful background information on the government initiative and agreements concerning the operation of military housing on federal government land. *See Clover*, ECF No. 106.

1    and that they should have replaced that cabinet[.]" (*Id.* at 118:21-119:16.)  The following

2    day, another inspector came to Phipps's home and apparently took a sample of the mold.

3    (*Id.* at 140:3-16.)  That inspector returned the following day with a letter from Lincoln

4    telling Phipps she was being displaced from her home so the mold could be remediated.

5    (*Id.* at 142:10-20.)  The following day, Phipps was relocated to another home in the

6    neighborhood.  (*Id.* at 151:24-153:2.)

7         A few hours after leaving her original home, Phipps realized she left her medication

8    in the fridge, and she reentered the home to retrieve it.  (*Id.* at 153:3-155:13.)  Several days

9    later, Phipps was walking through the neighborhood at night and noticed the lights were

10   on inside her home, so she again reentered the property.  (*Id.* at 162:5-163:13.)

11        Sometime thereafter, and after the remediation of Phipps's home had begun, Phipps

12   requested a pause in the remediation work so she could have an expert inspect the property.

13   Lincoln granted Phipps's request, and the remediation work was paused for approximately

14   two weeks until Phipps's expert was able to conduct an inspection.  Shortly thereafter,

15   Phipps was moved to Ward Lodging Camp Pendleton due to mice inside her temporary

16   housing.  (*Id.* at 172:2-21.)  Phipps remained in the Ward Lodging until December 18,

17   2020, when the remediation work was completed.  (*Id.* at 23-25.)

18        During her relocation, Phipps requested that she be allowed to terminate the Lease

19   early, and Lincoln agreed to that request.  (*Id.* at 176:15-21.)  Thus, Phipps did not

20   reestablish residence in the Palma Court house.  Instead, Plaintiff found lodging in a nearby

21   hotel and then moved around between several local campgrounds.  As of the date of her

22   deposition in this case (June 15, 2022), Plaintiff had reached the stay limit for the

23   campgrounds and was living in her car.  (*Id.* at 15:14-15.)

24        Phipps contends that as a result of her exposure to the mold in the Palma Court house,

25   she suffered physical and mental injuries and damages.  To redress those issues, Phipps

26   filed the present case against CPQH and Lincoln in San Diego Superior Court alleging

27   claims for negligence, nuisance, negligent infliction of emotional distress, breach of the

28   implied warranty of habitability, breach of the implied covenant of quiet use and

21cv1514 DMS(AHG)

1  enjoyment, rent abatement, gross negligence, premises liability, constructive (wrongful)

2  eviction, and intentional infliction of emotional distress.[2]  In response, CPQH and Lincoln

3  removed the case to this Court on the basis of federal enclave jurisdiction, federal agency

4  jurisdiction, and federal officer jurisdiction.  CPQH and Lincoln also filed a Counterclaim

5  against Phipps alleging claims for breach of the Lease, equitable indemnity and

6  contribution, and declaratory relief.[3]

## II.

## DISCUSSION

9       CPQH and Lincoln move for partial summary judgment on their counterclaim for

10  breach of the Lease on the ground there are no genuine issues of material fact on the

11  elements of that claim, and they are entitled to judgment as a matter of law.  On Phipps's

12  claims, CPQH and Lincoln assert they are entitled to summary judgment based on the

13  federal enclave doctrine, the choice of law provision in the Lease, the Supremacy Clause,

14  derivative sovereign immunity, and Phipps's failure to name an expert on the standard of

15  care for property management.  CPQH and Lincoln also contend they are entitled to

16  summary judgment on Phipps's request for punitive damages due to Phipps's failure to

17  come forward with evidence to support that request.

18  **A.    Legal Standard**

19       Summary judgment is appropriate if there is no genuine issue as to any material fact,

20  and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

21  moving party has the initial burden of demonstrating that summary judgment is proper.

---

[2] Plaintiff's opposition to the motion for summary judgment and Defendants' reply thereto address a claim for negligent misrepresentation, but Plaintiff did not allege a claim for negligent misrepresentation in this case.  Therefore, the Court does not address those arguments.

[3] CPQH and Lincoln also alleged counterclaims for intentional misrepresentation and negligent misrepresentation, but those counterclaims have since been dismissed. (*See* ECF No. 20.)

1   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The moving party must identify

2   the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the

3   absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

4   (1986).  "A material issue of fact is one that affects the outcome of the litigation and

5   requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard*

6   *Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

7   The burden then shifts to the opposing party to show that summary judgment is not

8   appropriate.  *Celotex*, 477 U.S. at 324.  The opposing party's evidence is to be believed,

9   and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*,

10   477 U.S. 242, 255 (1986).  However, to avoid summary judgment, the opposing party

11   cannot rest solely on conclusory allegations.  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th

12   Cir. 1986).  Instead, it must designate specific facts showing there is a genuine issue for

13   trial.  *Id.  See also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th

14   Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond

15   pleadings, plaintiff must counter by producing evidence of his own).  More than a

16   "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita*

17   *Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

18   **B.    Breach of Lease**

19   Turning first to the motion for partial summary judgment, CPQH and Lincoln argue

20   they are entitled to summary judgment on their first counterclaim for breach of the Lease.

21   To prevail on this counterclaim, CPQH and Lincoln must show the existence "of a contract,

22   [their] performance or excuse for failure to perform, [Phipps]'s breach and damage to

23   [CPQH and Lincoln] resulting therefrom." *Spinks v. Equity Residential Briarwood*

24   *Apartments*, 171 Cal. App. 4th 1004, 1031 (2009) (quoting *McKell v. Washington Mutual,*

25   *Inc.*, 142 Cal. App. 4th 1457, 1489 (2006)).  Neither side disputes the existence of a contract

26   here, but each side disputes the three other elements.

27   On the second element, CPQH and Lincoln argue they have performed all of their

28   obligations under the Lease.  Specifically, they argue they responded to all of Phipps's

1    service requests on the property.  Unfortunately, however, CPQH and Lincoln fail to cite
2    the provisions of the Lease that set out their obligations.  Instead, they leave the Court to
3    sift through the evidence and determine, for itself, what the Lease required.  That does not
4    satisfy CPQH and Lincoln's burden on a motion for summary judgment.  As stated in
5    *Government Employees Ins. Co. v. Nadkarni*, 477 F.Supp.3d 1091, 1095 (N.D. Cal. 2020),
6    "[t]he party moving for summary judgment has the initial burden of informing the court of
7    the basis for the motion, and identifying portions of the pleading, depositions, answers to
8    interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of
9    material fact."  (citing *Celotex*, 477 U.S. at 323).  Because CPQH and Lincoln have not
10   met that burden, their motion for summary judgment on their counterclaim for breach of
11   the Lease is denied.

12   **C.    Federal Enclave Doctrine**

13        Turning to CPQH and Lincoln's motion for summary judgment, the first argument
14   raised there is that many of Phipps's claims are barred by the federal enclave doctrine.
15   CPQH and Lincoln specifically attack Phipps's claims for negligent infliction of emotional
16   distress, intentional infliction of emotional distress, breach of the implied warranty of
17   habitability, rent abatement, constructive (wrongful) eviction, premises liability, and
18   breach of the implied covenant of quiet use and enjoyment.

19        The Court addressed this argument in *Clover v. Camp Pendleton & Quantico*
20   *Housing LLC*, No. 20cv567-LAB (WVG), 2023 WL 2354807 (S.D. Cal. Mar. 4, 2023).
21   That case involved facts similar to those at issue here, and the same defendants and counsel
22   as appear in this case.  On the defendants' motion for summary judgment, the Court found
23   the federal enclave doctrine applied, and barred the plaintiffs' claims for negligent
24   infliction of emotional distress, breach of the implied warranty of habitability, rent
25   abatement, and premises liability.  *Id.* at *2-4.

26        In the present case, Phipps raises the same arguments against application of the
27   federal enclave doctrine, but this Court is not persuaded that those arguments warrant an
28   outcome different from that in *Clover*.  Rather, the Court finds the reasoning of *Clover*

21cv1514 DMS(AHG)

1    persuasive, and adopts and applies it here to reach the same result.  For the reasons set out

2    in *Clover*, the federal enclave doctrine bars Phipps's claims for negligent infliction of

3    emotional distress, breach of the implied warranty of habitability, rent abatement, and

4    premises liability.  As in *Clover*, CPQH and Lincoln have not shown the federal enclave

5    doctrine bars Phipps's claim for breach of the implied covenant of quiet use and enjoyment.

6           Plaintiff here raises two additional claims that were not at issue in *Clover*, and that

7    CPQH and Lincoln argue are barred by the federal enclave doctrine:  Phipps's claims for

8    intentional infliction of emotional distress and constructive (wrongful) eviction.  Phipps

9    offers no response to CPQH and Lincoln's arguments that California law did not recognize

10   these claims prior to December 31, 1942, but CPQH and Lincoln must still show they are

11   entitled to summary judgment on these claims as a matter of law.  On the intentional

12   infliction of emotional distress claim, CPQH and Lincoln's authority supports their

13   argument that California did not recognize such a claim prior to December 31, 1942.  (*See*

14   Mem. of P. & A. in Supp. of Mot. for Summ. J. at 10, ECF No. 43-1) (citing 5 B.E. Witkin,

15   Summary of California Law: Torts, §§ 449–50 (10th ed. 2005); *State Rubbish Collectors*

16   *Assn. v. Siliznoff*, 38 Cal. 2d 330, 336 (1952); *Bowden v. Spiegel*, 96 Cal. App. 2d 793, 795

17   (1950); *Richardson v. Pridmore*, 97 Cal. App. 2d 124, 129 (1950)).  The same cannot be

18   said, however, for Phipps's claim for constructive (wrongful) eviction.  That claim appears

19   in cases dating back to 1910, *see Bilicke v. Janss*, 14 Cal. App. 342, 347 (1910); *Blessing*

20   *v. Fetters*, 40 Cal. App. 471, 476-77 (1919); *Klein v. Lewis*, 41 Cal. App. 463, 465-67

21   (1919), none of which CPQH or Lincoln address.

22          In light of the above, the federal enclave doctrine bars Phipps's claims for negligent

23   infliction of emotional distress, breach of the implied warranty of habitability, rent

24   abatement, premises liability, and intentional infliction of emotional distress.  Thus, CPQH

25   and Lincoln are entitled to summary judgment on those claims.  CPQH and Lincoln have

26   not shown Phipps's claims for breach of the implied covenant of quiet use and enjoyment

27   and constructive (wrongful) eviction are barred by the federal enclave doctrine, and thus

28   their request for summary judgment on those claims is denied.

**D.     Choice of Law Provision**

Next, CPQH and Lincoln argue Plaintiff's remaining claims, i.e., her claims for negligence, nuisance, breach of the implied covenant of quiet use and enjoyment, gross negligence, and constructive (wrongful) eviction, are barred by the choice of law provision in the Lease.  That provision states:

> Owner and Resident agree that this Lease and the contractual relationship between the parties shall be construed exclusively in accordance with, and shall be exclusively governed by, federal substantive law, except that the following state law shall apply:  California Civil Code, Sections 1940 – 1954.1 (Leasing Land and Dwellings) and Sections 1980 – 1991 (Disposition of Personal Property Remaining on Premises at Termination of Tenancy), California Code of Civil Procedure Sections 1159 – 1179a (Summary Proceedings for Obtaining Possession of Real Property in Certain Cases), and California state common law interpreting these sections.

(Martinez Decl., Ex. A ¶36.)

On its face, this provision provides that the parties' contractual relationship shall be governed exclusively by federal law, save for California Civil Codes §§ 1940-1954.1, 1980-1991, and California Code of Civil Procedure §§ 1159-1179a, which shall also apply.  Plaintiff argues first that her claims are based on the specific state statutes identified in the Lease, therefore they are not barred.  Plaintiff's claim for negligence does reference California Civil Code §§ 1941, et seq. and 1941.1, et seq., (*see* Compl. ¶¶66, 72), therefore that claim is not barred by the choice of law provision.  However, none of Plaintiff's other remaining claims reference or rely on any of the specific state statutes identified in the choice of law provision.

Nevertheless, Plaintiff raises two additional arguments in an attempt to avoid the choice of law provision.  First, Plaintiff argues the Operating Agreement between the Navy and Hunt Lincoln Clark Family Communities, LLC, the Ground Lease between the Navy and Defendant CPQH, and the Property Management Agreement between Defendants all call for the application of state law.  Plaintiff is correct that the Property Management Agreement is governed by state law, (*see* Decl. of Philip J. Rizzo in Supp. of Mot. ("Rizzo

1   Decl."), Ex. D ¶8.9, ECF 43-3), but she fails to explain how that choice of law provision

2   applies to her claims.  The Operating Agreement and Ground Lease also fail to support

3   Plaintiff's argument as they are governed by federal law, not state law.  (Rizzo Decl., Ex.

4   B § 9.02 (Operating Agreement), Ex. C ¶25.4 (Ground Lease).)  Therefore, this argument

5   does not save Plaintiff's claims.

6       Plaintiff's only other argument on the choice of law provision is that enforcing

7   federal law here would violate public policy.  (*See* Pl.'s Opp'n to Mot. for Summ. J. at 17-

8   18, ECF No. 49.)  Specifically, Plaintiff argues there is a void in federal law covering the

9   facts at issue here, which would allow Defendants to evade liability.  (*Id.* at 17.)  The Court

10  disagrees.  Although the Lease is governed generally by federal law, it does allow for the

11  application of certain state statutes, and Plaintiff relies on some of those statutes in support

12  of her negligence claim.  In addition, Plaintiff could have alleged a claim for breach of the

13  Lease, but did not.  Plaintiff's argument here relies on a faulty premise, and it does not

14  warrant disregard of the choice of law provision.

15      In light of the above, the Court grants Defendants' motion for summary judgment

16  on Plaintiff's claims for nuisance, breach of the implied covenant of quiet use and

17  enjoyment, gross negligence, and constructive (wrongful) eviction, and denies Defendants'

18  motion on Plaintiff's negligence claim.

19  **E.    Supremacy Clause**

20      Defendants' next argument is that Plaintiff's claims are barred by the Supremacy

21  Clause.  Specifically, Defendants contend that allowing Plaintiff to pursue claims under

22  California law "would effectively place California in the position of dictating military

23  housing rules, regulations and policies to the U.S. government on a federal enclave."

24  (Mem. of P. & A. in Supp. of Mot. for Summ. J. at 16, ECF No. 43-1.)

25      In support of this argument, Defendants cite general language about the Supremacy

26  Clause from a host of cases.  (*See* Mem. of P. & A. in Supp. of Mot. for Summ. J. at 15-17

27  (citing *Torres v. Texas Dept. of Public Safety*, ___ U.S. ___, 142 S.Ct. 2455 (2022);

28  *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988); *San Diego Building Trades*

9

*Council v. Garmon*, 359 U.S. 236 (1959); *McCulloch v. Maryland*, 17 U.S. 316 (1819); *Geo Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022); *Boeing v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014); *Laine v. Weinberger*, 541 F.Supp. 599 (C.D. Cal. 1982); *Burge v. Jones*, No. B-92-022, 1992 WL 415263 (S.D. Tex. Nov. 18, 1992).)  However, none of those cases address the specific facts presented here, namely whether a resident of military housing may bring a negligence claim for personal injuries arising from water and mold damage in her home against the homeowners and property managers.  Rather, the cases cited by Defendants deal with state taxes on federal banks (*McCulloch*), state workers compensation laws (*Goodyear*), state laws prohibiting the operation of private detention facilities within the state (*Geo Group*), state laws governing cleanup of a federal nuclear site (*Movassaghi*), state public nuisance laws (*Laine*), state products liability laws (*Burge*), whether states may invoke sovereign immunity as a defense to claims specifically provided for by federal statute (*Torres*), and whether state courts may award damages for union activity regulated by the National Labor Relations Act (*Garmon*).  Absent a more precise argument as to how the Supremacy Clause bars the particular claims at issue here, or specific authority to that affect, Defendants' Supremacy Clause argument does not entitle them to summary judgment.

**F.    Derivative Sovereign Immunity**

Next, Defendants argue they are entitled to derivative sovereign immunity from Plaintiff's claims.  As with many of the arguments raised here, Defendants raised the derivative immunity argument in *Clover*, both in a motion to dismiss and in a motion for summary judgment.  On each of those motions, the Court rejected the argument, saying, first, it did not warrant dismissal of the plaintiffs' claims, and then reaffirming that decision by rejecting that defense on summary judgment.  This Court finds that discussion of the issue persuasive, and adopts that reasoning and conclusion here.  Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claims on the basis of derivative sovereign immunity.

/ / /

**G.      Expert Witness**

Defendants' next argument is that Plaintiff's failure to name an expert witness on the standard of care for property management dooms her claims for negligence, nuisance, negligent infliction of emotional distress, gross negligence, and premises liability.  As with Defendants' Supremacy Clause argument, this argument is based on general case law and lacks any authority relevant to the specific facts of this case.  Absent more specific authority, Defendants are not entitled to summary judgment based on Plaintiff's failure to name a property management expert.

**H.      Punitive Damages**

Defendants' final argument is that they are entitled to summary judgment on Plaintiff's request for punitive damages.  Specifically, Defendants assert there is no evidence to support the high standard for an award of punitive damages.

California Civil Code § 3294(a) states:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal. Civ. Code § 3294(a).  "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1).  "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."  Cal. Civ. Code § 3294(c)(2).  And "fraud" is defined as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."  Cal. Civ. Code § 3294(c)(3).

Here, Plaintiff clearly pleads facts to support her request for punitive damages. (Compl. ¶¶24-26.)  In response to Defendants' motion for summary judgment on punitive

1   damages, she failed to cite any evidence to support those alleged facts, but in response to

2   the motion for partial summary judgment on Defendants' claim for breach of the Lease she

3   did submit evidence that there was a water leak in the Palma Court home before she moved

4   in, and that those repairs were not completed properly.  (*See* Webb Decl., Ex. 6 at 118:21-

5   119:16.)  Whether that evidence satisfies Plaintiff's ultimate burden of proof remains to be

6   seen, but this evidence is sufficient to raise a genuine issue of material fact.  Accordingly,

7   Defendants are not entitled to summary judgment on Plaintiff's request for punitive

8   damages.

9                                    **III.**

10                       **CONCLUSION AND ORDER**

11          For these reasons, Defendants' motion for partial summary judgment on their claim

12   for breach of the Lease is denied.  Defendants' motion for summary judgment on Plaintiff's

13   claims is granted in part and denied in part.  Specifically, the Court denies the motion as to

14   Plaintiff's negligence claim and grants the motion as to all of Plaintiff's other claims.

15          The Court confirms the pretrial conference scheduled for August 11, 2023.

16          **IT IS SO ORDERED**.

17   Dated:  August 4, 2023

18   _____

19   Hon. Dana M. Sabraw, Chief Judge
     United States District Court

20

21

22

23

24

25

26

27

28